## Cobb v. Commonwealth.

(Decided Dec. 15, 1936.)

D. M. ALLEN for appellant.

B. M. VINCENT, Attorney General, J. J. LEARY, Assistant Attorney General, and G. MURRAY SMITH, Commonwealth Attorney, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The grand jury of Madison county, Ky., returned an indictment against appellant, charging him with housebreaking. It was charged that he broke into the storehouse of Mrs. Anna M. Robinson, doing business as Robinson Poultry Company, in Richmond, Ky., with the felonious intent to steal therefrom. A second count in the indictment charged two previous convictions of a felony as provided in section 1130 of the Kentucky Statutes, known as the "Habitual Criminal Act," as follows:

"The grand jurors do further charge and present that said Coleman Cobb, before the finding of this

indictment and in the Madison circuit court, State of Kentucky, at the February Term of said Court in the year 1933, had been convicted two times for the offenses of house breaking; said convictions being as follows: One in indictment No. 687, and dated March 4th, 1933, and the punishment fixed at two years in the penitentiary as shown from Order Book 11 at Page 117 of said court; the other in indictment No. 688, and dated March 4, 1933, and the punishment fixed at four years in the penitentiary as shown from Order Book 11 at page 117, of said court, both of said prior convictions and judgments being in full force and effect and never having been modified, vacated, appealed from or set aside, against the peace and dignity of the Commonwealth of Kentucky.''

Appellant was tried and convicted of the offense charged in the first count in the indictment and sentenced to life imprisonment under the increased penalty provided in the statute, supra, on the second count. A reversal is asked on the grounds: (1) That the court erred in admitting incompetent testimony which was prejudicial; and (2) that the evidence does not show that appellant had theretofore been convicted of two felonies in contemplation of the statute authorizing a life sentence for a third conviction, and the court erred in its instructions given to the jury authorizing it to impose a life sentence under that statute.

■ The alleged incompetent evidence complained of relates to statements made by appellant to the officers and those who had charge of him after he was arrested and while bringing him from Covington, Ky., to Richmond, Ky. It appears that the storehouse of Mrs. Robinson was broken into on the night of January 18, 1936, and on the same night an automobile was stolen from Virgil Jett of Richmond, and on the following day information was received that the car had been found wrecked near Williamstown, Ky. Jett went to Williamstown and found his car and found in it certain furs, hides, etc., which had been stolen from Mrs. Robinson and also a coat later identified as the coat of appellant. On the following week appellant was located at Covington, Ky., and W. B. Lackey, chief of police of Richmond, Ky., Virgil Jett, and Mr. Robinson, the hus-

band of Anna M. Robinson, went to Covington and with the assistance of the detectives and officers of Covington, appellant was arrested and brought back to Richmond, Ky. On the trial of the case, Lackey, the chief of police, and Mr. Jett testified that while on the way from Covington to Richmond appellant told them that he broke into the Robinson Poultry House and took the merchandise therefrom found in his car and detailed to them how he and another man by the name of James Smith broke into the store and obtained the merchandise, and further said that they then went to Mr. Jett's garage and stole his car and put the merchandise in it and started to Covington; that another car was trailing them and they suspected that some one was following them and they were driving fast and wrecked the car. It appears that they talked to him about the charge when they first arrested him while he was in Covington, and when they started from Covington to Richmond they talked to him almost continuously about the matter until they were about halfway between Covington and Richmond, a distance of about 50 miles, and appellant then made the statements to them indicated above. Mr. Jett was asked and answered as follows:

"Q. You and some of the others questioned him almost continuously? A. Off and on—not continuously.

"Q. Off and on until he confessed? A. Yes, until he finally confessed."

Jett further said that Mr. Robinson questioned appellant as to whether he was guilty from the time they arrested him or started to Richmond with him, until he confessed about 50 miles this side of Covington, and Robinson told him that if he would tell the truth it would be easier and anything he could do for him he would be glad to help, and after these statements were made to appellant he then made the alleged confession.

It does not appear that the officers threatened to do him any personal violence, but it is apparent that they questioned him almost continuously for several hours and held out inducements to him to confess by promising him that they would help him out of his trouble. One of the witnesses further said that they talked to him or asked him five or six times to confess or tell

what he knew about the matter before he made the confession. Appellant denied that he broke into the store or had any connection with it. However, he admitted making the statements to the officers, and said that two detectives in Covington, Lackey and Mr. Robinson, kept asking him about the matter and he åt first told them that he was not guilty. He was asked and answered as follows:

"Q. Were you promised anything before you made these statements that you knew who broke in and where you were? A. Robinson told me—he told ,me, he said, 'There is a man by the name of Coates broke into his place and he did not have to go to the penitentiary and if you will come clean and tell me who done it I will try to keep you out of it.'

"Q. That was before you made the statements you described above? A. Yes."

Appellant's evidence was not denied by the Commonwealth by rebuttal or otherwise.

It will be seen that the officers persistently plied appellant with questions for several hours, and also intimated to him that if he would confess he might not be prosecuted. In Caruth v. Com., 251 Ky. 143, 64 S. W. (2d) 495, quoting with approval from the case of Bennett v. Com., 242 Ky. 244, 46 S. W. (2d) 84, 85, the court said:

"The mere fact that a confession or statement may be made to officers does not render proof thereof incompetent if it was voluntarily made. Plying with questions means the persistent and repeated propounding of inquiries to elicit a desired answer, carried to such an extent that the prisoner feels required to answer as the questioner wishes in order to escape from the pressure. Com. v. Long, 171 Ky. 132, 188 S. W. 334."

It is the well-known rule that a confession voluntarily made by an accused is admissible, and, even in response to a question, if the questioning is not persisted in to the extent of bringing pressure to bear on the accused to confess in order to escape being plied with questions. However, in the present case it appears that the officers transgressed the bounds of pro-

priety by constantly questioning the appellant and making promises to him. Our conclusion is that the court erred in admitting as evidence the statements made by appellant to the officers, and the case should be reversed for that reason.

We now come to a consideration of the second count in the indictment and the instructions of the court authorizing the jury to impose a life sentence on appellant under the Habitual Criminal Act.

The evidence disclosed by the records of the Madison circuit court relating to the appellant's former convictions discloses that on the 4th day of March, 1933, appellant was tried on two separate charges of housebreaking designated as indictments Nos. 687 and 688, and was sentenced to four years in prison on one charge and two years on the other, and the judgments were entered on the same page of the order book and on the same date. It is insisted for appellant that before the present charge could be considered a third conviction of a felony in contemplation of the statute, it was necessary that appellant should have been convicted of a second felony subsequent to his conviction of the first one and after he had paid the penalty inflicted for it; and, likewise, the third conviction should be subsequent to the second, and after he had paid the penalty for it.

The case of Brown v. Com., 100 Ky. 127, 37 S. W. 496, 18 Ky. Law Rep. 630, is precisely in point with the case at bar. In that case Brown was indicted upon two charges of house breaking on June 8, 1896, and was sentenced to five years imprisonment in each case. On June 10, two days later, another indictment was returned against him for a like offense, and the indictment contained a second count setting up the two former convictions. He was found guilty under the habitual criminal statute, and sentenced to the penitentiary for life. The judgment was reversed on ground that the third conviction must be restricted to felonies committed subsequent to two former convictions for a felony committed subsequent to each other, that is, the second conviction must be for an offense committed subsequent to the first offense and conviction, and the third conviction subsequent to the second, and after he had paid the penalty for it. In disposing of this question, the court said:

"The question presented for decision is whether the statute in question authorizes the imposition of the increased penalty for an offense not committed after the original convictions. We think not. The statute was manifestly intended to provide an increased penalty for a subsequent offense, in order to deter the offender from its repetition. After punishment is imposed for the commission of a crime, the double penalty is held in terrorem over the criminal for the purpose of effecting his reformation, and preventing further and subsequent offenses by him. So we find that for a third offense the punishment of imprisonment for life is provided by the act, upon the theory, doubtless, that he must then be regarded as incorrigible. The reformatory object of the statute, namely, to provide a deterrent from future crime, would not be effected by a construction which gives to the offender no opportunity to reform. Moreover, 'doubtful questions as to the severity of the penalty are to be resolved in favor of the accused.' 4 Am. & Eng. Enc. Law, 726.

"We are of the opinion that the words 'convicted a second time of felony,' and 'convicted a third time of felony,' must be restricted to felonies committed subsequent to the dates of the convictions relied on to effect an increase of the penalty, for otherwise no locus poenitentiæ would be afforded to the accused."

See, also, McIntyre v. Com., 154 Ky. 149, 156 S. W. 1058; Wages v. Com., 192 Ky. 487, 233 S. W. 1044; 82 A. L. R., annotations pages 345 or 386, inclusive.

It will be seen from the annotations in 82 A. L. R. 345, supra, that all jurisdictions are not in harmony on the question of prior offense, that is, whether the convictions and penalties imposed in a first or second offense shall have been subsequent to each other in order to constitute a second or third offense in contemplation of the Statutes. However, the weight of the authority seems to be in harmony with the Brown Case, supra, which we think is conclusive of this question.

For reasons stated, the judgment is reversed and remanded for proceedings consistent with this opinion.