Nathan R. Sobel, J.
The defendant was convicted by a jury of the crime of burglary second degree and sentenced on November 21, 1952 to a term of 15 years to life as a fourth and subsequent felony offender. Prior to such sentence he was charged with 12 prior convictions, all outside 'this State, pursuant to section 1943 of the Penal Law. A jury trial was had on the issue of identity. During such trial the court removed from consideration of the jury a conviction of November 10, 1917 in the State of Massachusetts. The jury found for the People on the remaining allegations in the information. The defendant was thereupon sentenced as a twelfth-felony offender by another Judge of this court.
The present petition is (1) for resentence on the ground that he is not a fourth felony offender under section 1942 of the *621 Penal Law and (2) that section 1942 of the Penal Law is unconstitutional when an adjudication under that section is based on out-of-State (hereinafter referred to as “ foreign ”) convictions.
I shall discuss first his motion for resentence.
This is one of many applications made by this defendant for correction of sentence. All previous applications have been denied. This defendant is entitled to have a ruling from this court with respect to each of the 11 foreign convictions upon which his sentence rests. Before ruling on the 11 allegations in the information separately, I discuss the general rules applicable to foreign convictions.
In reaching a determination whether an out-of-State conviction is for a crime which would be a felony if committed in this State our appellate courts have prescribed certain rules.
1. The Olah Rule.
People v. Olah (300 N. Y. 96) requires its to examine the foreign statute. If the foreign statute does not contain all of the elements of our felony statute, the conviction must be disregarded. Obviously, says Olah, the indictment by expanding the allegations cannot change the foreign statute’s definition of the crime. All such expanded allegations are inoperative.
If the foreign statute contains all of the elements of our felony statute, we need only examine the foreign judgment to determine whether the defendant was found guilty of the crime defined in the foreign statute. Obviously if he was found guilty of another included or lesser crime (as permitted in several of our States) the inquiry must be repeated by examining the statute defining the other or lesser crime.
Under the Olah rule the main problem with which we have to contend is to determine under which foreign statute the defendant has been convicted. If the indictment or the judgment cites the statute there is no problem. If it does not, only the operative allegations of the indictment may be examined to find the foreign statute. Like any other fact, the burden is upon the People to establish the foreign statute which is the basis of the conviction and any doubt in this regard must be resolved in the defendant’s favor.
2. The Disjunctive Statute Rule.
This rule is merely an expansion of the Olah rule.
A single foreign statute may define disjunctively two or more separate crimes. If they are all felonies under the Olah rule, we have no problem. But if one crime is a felony and another is not, we follow the disjunctive statute rule laid down in People v. Love (305 N. Y. 722); People ex rel. Gold v. Jackson (5 N Y *622 2d 243); People v. Kronick (308 N. Y. 866); People ex rel. Marsh v. Martin (308 N. Y. 823); People v. Markus (7 A D 2d 997); People v. Benjamin (7 A D 2d 410) and People ex rel. Knapp v. Jackson (6 A D 2d 151).
The disjunctive statute rule as it expands the Olah rule is clearly stated by Judge Burke in People ex rel. Gold v. Jackson (supra, p. 245): “ The rationale of Olah does not license the courts below, in sentencing recidivists, to disregard the indictment or information upon which a conviction in a sister State is based in determining whether the crime charged therein constitutes a felony in New York. The intent and spirit of the Olah rule require that the courts of New York abstain from considering the surplusage contained in the indictment or information which would spell out a felony under our penal statutes. Only those facts alleged in the indictment or information which are not operative or material under the applicable criminal statute of the foreign jurisdiction are to be discounted in ascertaining whether the crime charged is to be deemed a felony in New York.”
In order to ascertain under which of the disjunctive foreign statute provisions the defendant was convicted, we examine the operative allegations of the indictment. If the operative allegations establish conclusively that the defendant was convicted of that part of the foreign statute which would be a felony under our law, the conviction may be counted. If not it must be disregarded.
Thus for instance in Love (supra) the foreign statute defined larceny disjunctively as (1) stealing from the person and (2) stealing $25 or more in any manner. The indictment alleged the stealing of the sum of $20.75 from the person. This conclusively established that the defendant was convicted under (1) stealing from the person. He could not have been convicted of stealing under (2) since the indictment would have to allege theft of $25 or more. And in Gold (supra) the foreign statute defined burglary disjunctively as (1) breaking and entering with intent to commit a crime and (2) “ breaking out ” of a building under circumstances not a felony in this State. The operative allegations of the indictment alleged breaking and entering with intent to commit a crime. This excluded any possibility that defendant was convicted of “ breaking out ” of a building. Also some States define burglary as breaking and entering, etc., in the daytime or entering, etc. without breaking in the nighttime. If the operative facts allege a breaking and entry, etc., in the daytime, such allegations exclude any possibility that the defendant entered without breaking in the nighttime. People *623 v. Knapp (supra) is an illustration of both kinds of burglary-statutes.
However under the disjunctive statute rule if the operative allegations of the indictment do not exclude all possibility that defendant was convicted of only that part of the disjunctive foreign statute which charges a felony under our statutes, he must be given the benefit of the doubt.
Although not pertinent to this decision we also follow the disjunctive statute rule where the foreign statute does not give a substantive definition of a crime, such as in the Federal Articles of War or the present Uniform Code of Military Justice (People v. Benjamin, 7 A D 2d 410, supra, and cases cited, or, under certain circumstances, in those States which have common-law crimes as distinguished from statutory crimes.)
3. The Joined or Consolidated Indictment Buie.
Both sections 1941 and 1942 of the Penal Law provide: “ For the purposes of this section conviction of two or more crimes charged in separate counts of one indictment or information, or in two or more indictments or informations consolidated for trial, shall be deemed to be only one conviction.”
This provision was added to sections 1941 and 1942 of the Penal Law (as well as the habitual offender laws, Penal Law, § 1020 and Code Crim. Pro., § 510) by chapter 328 of the Laws of 1936. That chapter law amended section 279 of the Code of Criminal Procedure to permit, for the first time in this State, separate but similar crimes to be joined in one indictment, or if separate indictments have been found, the consolidation of such indictments for trial. The ostensible purpose of the new law was to permit a single trial of several similar charges instead of separate trials.
Prior to the» 1936 amendment it was not unusual for the court to try one of the crimes, and if adequate punishment could be imposed, dismiss the others. This would result in one conviction for the purpose of the subsequent offender laws. Under the 1936 amendment a trial would result necessarily in separate verdicts and the new law permitted separate punishments for each conviction to run either concurrently or consecutively. (Penal Law, § 2190, subd. 4, as added by L. 1936, ch. 328.) This would result in several convictions for the purpose of the subsequent offender laws.
The purpose of the above-quoted paragraph, added by the Legislature in 1936 to both the subsequent offender laws and the habitual offender laws, was to provide that if the prosecutor *624 did take advantage of the discretion given to him by the new law, to join in one indictment or consolidate in one indictment separate but similar crimes, any resulting convictions were to be counted as one.
This reasoning was followed in People ex rel. Janosko v. Fay (6 N Y 2d 82). This rule is of considerable importance to the petitioner since several of his prior convictions require its interpretation.
In Janoslto (supra) the relator was charged with two separate crimes in two separate indictments found on the same day by the same Grand Jury in Allegheny County, Pennsylvania. The indictments were tried simultaneously before the same jury and same Judge. Relator was found guilty of both crimes and sentences were imposed to run consecutively. The court held unanimously that under the above-quoted clause of sections 1941 and 1942 of the Penal Law, these convictions were to be counted as one. The court in discussing the consolidation clause, stated (pp. 86, 87):
“It is irrelevant to this policy whether a convict has been subject to several indictments which could have been consolidated, or whether they were formally merged into one, provided that they have been tried together.
* * •
‘ ‘ Unless the draftsman to this amendment to section 1942 had in mind that for this purpose a single conviction would result from the trial of separate crimes simultaneously, whether by consolidation or joint trial, the words ‘ for trial ’ would add nothing except to emphasize that the different counts must be tried together, and that being tried together is the essential thing. The animating thought is that if the criminal charges are enough alike in place, in time and in nature to be determined at one trial, and have been tried together, they should only count once in testing whether a convict is a second, third or fourth felony offender.”
In Janoslto (supra) the Pennsylvania causes were tried together and the court placed proper emphasis on that fact.
This conclusion is further supported by the memorandum of the sponsor of chapter 328 of the Laws of 1936, Special Prosecutor Dewey, who stated in his memorandum to the Governor (Public Papers of Governor Lehman, 1936, p. 231): “ Lest it be suggested that the proposed bill might, with one verdict on an indictment containing numerous counts, bring a defendant automatically within the operation of the habitual offender laws, the amendments to section 510 of the Code of Criminal Procedure *625 and sections 1020,1941 and 1942 of the Penal Law are attached for the sole purpose of expressly providing that, within the meaning of the habitual offender laws, one verdict of conviction shall be deemed to be only one conviction regardless of how many counts are involved.”
The result under Janosko (supra) is that if separate crimes are consolidated under the conditions set forth in section 279 of the Code of Criminal Procedure or consolidated with the consent of the defendant under any conditions, the resulting verdicts count as one under the subsequent felony laws.
Does this mean that if separate crimes are consolidated under our section 279 of the Code of Criminal Procedure or under similar statutes of other States, and the defendant pleads guilty each conviction is to be separately counted? Evidently, yes! Janosko (supra) so holds.
This policy of course creates inequities between those who plead and those who insist on trial. But such inequities already exist under our subsequent felony statutes. (People v. Bravata, 57 N. Y. S. 2d 333, appeal dismissed 269 App. Div. 899.)
Some habitual offender statutes of other States require that each succeeding conviction to be counted must be subsequent to a previous conviction both in time of commission and in time of conviction. (Guilliams v. State, 159 Tex. Cr. Rep. 81; Dye v. Skeen, 135 W. Va. 90; Guilford v. Mayo, 93 So. 2d 110 [Fla.].) This eliminates ‘ ‘ same time ’ ’ convictions altogether. This is not the law in this State. The only exception to our general policy is the one specified in the consolidation clauses adopted in 1936.
I hold that in the instant case, I am bound by the ruling of Janosko since all the “ same time ” foreign convictions of the defendant were the result of pleas.
I do believe that an appellate court might be justified in ruling that pleas to several crimes following consolidation should also be counted as one.
In my opinion neither the Legislature nor Special Prosecutor Dewey used the terms “ consolidation for trial ” in its accepted legal sense. The Special Prosecutor’s office was not primarily concerned with the consolidation of two or more existing indictments into one for the purpose of a single trial. His 1936 memorandum to the Governor establishes that what he was seeking mainly was permission to “ consolidate ” meaning really joining, several similar related charges in a single indictment in the first instance. Before the amendment this would be duplicitous pleading. He then stated that the consolidation clause was inserted to answer any contention that a conviction *626 under such an indictment would automatically bring a defendant “ automatically within the operation of the habitual offender laws”. In this respect, he was wrong. Neither the old nor new statute brought a defendant “automatically” within these laws. He would only be affected if he subsequently was convicted of a felony.'
My point is that the term ‘ ‘ consolidation for trial ’ ’ meant joinder for the purpose of trial. It was not intended to lay special stress on whether the ultimate conviction was by plea or verdict. Under such a construction, the appellate courts may conclude that ‘ ‘ same time ’ ’ convictions shall be counted as one if they are the result of a joinder of separate crimes, or a consolidation of separate crimes, in one indictment irrespective of whether the conviction is by plea or verdict.
On the basis of the foregoing rules, I make the following separate determinations with respect to each of the allegations in the information charging the defendant as a fourth or subsequent offender.
Allegation Number One:
Burglary conviction. November 10, 1917. Essex County, Massachusetts. Withdrawn by the court. Not counted.
Allegation Number Two:
Housebreaking. April 4, 1924. Supreme Court, District of Columbia.
Statute: Section 22 — 1801 (6:55).
Ruling — Under the disjunctive statute rule after examining the operative provisions of the indictment, I rule that this crime would not be a felony if committed in this State. Not counted.
Allegation Number Three :
Housebreaking. April 4, 1924. Supreme Court, District of Columbia.
Statute — Section 22 —1801 (6:55).
Ruling — Same as in allegation number three. Not counted. Allegation Number Four:
Burglary second degree. February 19, 1947. District Court of Leavenworth County, State of Kansas.
Statute — Revised Statutes of Kansas, 1923.
The burglary second degree statute is in the disjunctive. There are six crimes defined some of which would be misdemeanors. The first five crimes defined are burglaries of dwelling houses. The sixth crime defined is burglary of a commercial building.
*627 The information alleges a breaking and entry of a railroad ticket office. Applying the disjunctive statute rule, I conclude that defendant was convicted of the crime defined in the sixth paragraph to wit of breaking and entering a commercial building with intent to commit a crime. This is a felony in New York State. Counted.
Allegation Number Five :
Larceny. September 19, 1932. Superior Court of Middlesex County, State of Massachusetts.
Section 30 of chapter 266 of the Massachusetts Annotated Laws, volume 9, part IV.
This is a disjunctive statute but all crimes defined therein would be the felony of grand larceny if committed in the State of New York. This statute was so interpreted in People ex rel. Fellman v. Foster (270 App. Div. 877, affd. 296 N. Y. 954). Counted.
Allegation Number Six:
Breaking and entering in the daytime. September 19, 1932.
Section 18 of chapter 266 of the Massachusetts Annotated Laws, vol. 9, part IV.
This is a disjunctive statute. It defines entering without breaking in the nighttime and breaking and entering in the daytime, both with intent to commit a felony.
The operative provisions of the indictment and judgment allege a breaking and entering in the daytime. Under the disjunctive statute rule, I find that the crime would be a felony if the same had been committed in New York State.
It should be noted that this conviction was on the same day as the conviction in allegation number five. The crimes were committed on separate days. The defendant pleaded guilty to both on the same day. There is no reference in the judgment to any consolidation of the separate charges. A concurrent sentence was imposed. Counted.
Allegation Number Seven :
Breaking and entering. September 12,1932. Superior Court of Norfolk County, Massachusetts.
The same statute is here involved as in allegation number six. However, there is no allegation in either the indictment or the judgment that the crime was committed in the daytime. Applying the disjunctive statute rule, I rule that I cannot determine under which of the provisions the defendant was convicted. Not counted.
*628 Allegation Number Eight:
Breaking and entering in the daytime. June 30, 1938. Superior Court, Norfolk County, Massachusetts.
The same statute is here involved as in allegation number six. The indictment and judgment specifically allege the breaking and entry in the daytime with intent, etc.
(Note: Crime committed June 19, 1938. Building of Roger Pierce. Plea of guilty. Sentence 2% to 10 years, concurrent. No consolidation.) Counted.
Allegation Number Nine:
Breaking and entering in the daytime. June 30, 1938. (Same date and court as allegation No. 8.)
The same statute is here involved as in allegation number six. The indictment and judgment specifically allege breaking and entering in the daytime with intent, etc.
(Note: Crime committed June 21, 1938. Building of J. Blake Lumbard. Plea of guilty. Sentence 2% to 10 years, concurrent. No consolidation.) Counted.
Allegation Number Ten :
Breaking and entering in the daytime. June 30, 1938. (Same date and court as allegation No. 8.)
The same statute is here involved as in allegation number six. The indictment and judgment specifically allege a breaking and entering in the daytime with intent, etc.
(Note: Crime committed June 19, 1938. Building of Walter Lane. Plea of guilty. Sentence 2% to 10 years, concurrent. No consolidation.) Counted.
Allegation Number Eleven :
Breaking and entering in the daytime. June 30, 1938. (Same date and court as allegation No. 8.)
The same statute is here involved as in allegation number six. The indictment and judgment specifically allege a breaking and entering in the daytime with intent, etc.
(Crime committed June 19,1938. Building of Henry Watson. Plea of guilty. Sentence 2% to 10 years, concurrent. No consolidation.) Counted.
Allegation Number Twelve:
Burglary. October 21, 1941. Criminal Court of Tarrant County, Port Worth, Texas.
Statute, article 1389 and 1390, Vernon’s Annotated Criminal Statutes of Texas.
*629 Burglary is defined as entering a house by force (breaking), threats (no breaking) or fraud (no breaking) in the nighttime, or in like manner entering a house in the daytime and remaining concealed therein, with intent, etc.
The indictment charges that the defendant did “by force, threats or fraud, fraudulently break and enter”, etc. It does not specify daytime or nighttime. Article 1390 defines burglary in daytime to require both a breaking and entering.
Applying the disjunctive statute rule, I rule that the crime would be a felony if committed in the State of New York. Counted.
On the basis of the foregoing I rule that the defendant when sentenced on November 21, 1952, was a ninth felony offender.
It should be noted that even if the “ same time ” crimes alleged in allegations numbers 5 and 6, and in allegations numbers 8, 9, 10 and 11, were each counted as one, the defendant would nevertheless be a fifth felony offender.
The statutes construed are added to this opinion as an appendix for the convenience of the appellate courts.
The petitioner also contends that section 1942 of the Penal Law violates the Federal Constitution insofar as any adjudication therein is based on convictions outside the State of New York. He cites Huntington v. Attrill (146 U. S. 657) as holding that a penal provision of one State may not be given force and effect in another State.
The subsequent offender and habitual offender laws of this and other States have been challenged on constitutional grounds many times. They have been challenged as violating equal protection, privileges and immunities, due process, privilege against self-incrimination, double jeopardy and ex post facto. All such contentions have been rejected. (See 24 C. J. S., Criminal Law, § 1959, subd. b; Gryger v. Burke, 334 U. S. 728; Chandler v. Fretag, 348 U. S. 3; Carlesi v. New York, 233 U. S. 51; Pettway v. United States, 216 F. 2d 106; Sanders v. Waters, 199 F. 2d 317; People v. Sickles, 156 N. Y. 541; People ex rel. Fernandez v. Kaiser, 230 App. Div. 646.)
In recent years the Supreme Court has repeatedly denied certiorari in all cases raising such issues. (Matter of Tedford, 31 Cal. 2d 693, cert, denied 335 H. S. 847; People v. Poppe, 394 Ill. 216, cert, denied 329 U. S. 798; Hill v. Hudspeth, 161 Kan. 376, cert, denied 329 U. S. 756; Matter of Hibbs, 86 Okla. Cr. 113, cert, denied 335 U. S. 835.)
The basis of all such decisions is that the subsequent offender and habitual offender laws do not create new crimes but merely *630 describes circumstances under which more severe punishment may be imposed because of previous convictions. (Matter of Hibbs, supra; Gryger v. Burke, supra.)
The instant contention falls for the same reason. The State of New York does not seek to enforce foreign criminal statutes. It merely seeks to enforce our own statutes by increasing the punishment therefor because of previous convictions in this or other 'States. The specific contention raised by petitioner has not apparently been decided by the United States Supreme Court. It has been decided by the courts of other States. (Cross v. State, 96 Fla. 768; Kelley v. State, 204 Ind. 612; Commonwealth ex rel. Foster v. Ashe, 336 Pa. 238.)
The petition is in all respects denied. At the hearing it was stipulated that no testimony was required since only issues of law are raised by the petition. Please submit and serve order.
APPENDIX
Allegations Numbers Two and Three:
The crime of house-breaking is defined in the Code of the District of Columbia, .title '22, .as follows: “§ 22-1801 [6:55]. Definition and penalty. Whoever shall, either in the night or in the daytime, break and enter, or enter without breaking, any dwelling, bank, store, warehouse, shop, stable, or other building, or any apartment or room, whether at the time occupied or not, or any steamboat, canal boat, vessel, or other watercraft, or railroad car, or any yard where any lumber, coal or other goods or chattels are deposited and kept for the purpose of trade, with intent to break and carry away any part thereof or any fixture or other thing attached to or connected with the same, or to commit any criminal offense, shall be imprisoned for not more than fifteen years.”
Allegation Number Four:
The crime of burglary in the second degree is defined in the General Statutes of Kansas (Annotated) :
Burglary in the first degree. Every person who shall be convicted of breaking into and entering, in the nighttime, the dwelling house of another, in which there shall be at the time some human being, with intent to commit some felony, or any larceny therein, either — -First, by forcibly bursting or breaking the wall, or any outer door, window or shutter of a window of such house, or the lock or bolt of such door, or the fastening of such window or shutter; or, second, by breaking in any other manner, being armed with some dangerous weapon, or with the assistance and aid of one or more confederates, then actually present, aiding and assisting; or, third, by unlocking an outer door, by means of false keys, or by picking the lock thereof, shall be adjudged guilty of burglary in the first degree.” (§ 21-513.)
“Burglary in the second degree. Every person who shall be convicted of breaking into a dwelling house in the daytime, under such circumstances as would have constituted the crime of burglary in the first degree if committed in the nighttime, shall be deemed guilty of burglary in the second degree." (% 21-514.)
*631 “ Same; in the nighttime. Every person who shall be convicted of breaking into a dwelling house in the nighttime, with intent to commit a felony or any larceny, but under such circumstances as shall not constitute the offense of burglary in the first degree, shall be deemed guilty of burglary in the second degree.” (§ 21-515.)
“ Same, day or night. Every person who shall enter into the dwelling house of another, by day or night, in such manner as not to constitute any burglary as hereinbefore specified, with intent to commit a felony or any larceny, or, being in the dwelling of another, shall commit a felony or any larceny, and shall in the nighttime break any outer door, window, or shutter of a window, or any other part of said house, to get out of the same, shall be adjudged guilty of burglary in the second degree.” (§ 21-516.)
“ Same, breaking inner door in the nighttime. Every person who, having entered the dwelling house of another in the nighttime, through an open outer door or window, or other aperture not made by such person, shall break an inner door of the same house with intent to commit any felony or larceny, shall be adjudged guilty of burglary in the second degree. (§ 21-517.)
“ Same, breaking inner door in the nighttime when lawfully within dwelling house. Every person who, being admitted into any dwelling house with the consent of the occupant thereof, or who being lawfully in such a house, shall in the nighttime break an inner door with intent to commit a felony or larceny, shall be adjudged guilty of burglary in the second degree.” (§ 21-518.)
“ Dwelling house, defined. No building shall be deemed a dwelling house or any part of a dwelling house, within the meaning of the foregoing provisions, unless the same be joined to or immediately connected with, and a part of, a dwelling house.” (§ 21-519.)
“ Other instances of burglary in the second degree. Every person who shall be convicted of breaking and entering in the nighttime — First, any building within the curtilage of a dwelling house, but not forming a part thereof, or, second, any shop, store, booth, tent, warehouse, or other building, or any boat or vessel, in which there shall be at the time some human being, or any goods, wares, or merchandise, or other valuable thing kept or deposited; or, third, any passenger coach, baggage, freight or express car, caboose or other railway carriage in this state, with the intent to steal or commit any felony therein, shall on conviction be adjudged guilty of burglary in the second degree.” (§ 21-520.)
Allegation Number Five:
The crime of larceny is defined in section 30 of chapter 266 of the Massachusetts Annotated Laws, volume 9, part IV, as follows: “ § 30. Larceny, etc. Whoever steals, or with intent to defraud, obtains by a false pretence, or whoever unlawfully, and with intent to steal or embezzle, converts or secretes, with intent to convert, the property of another as defined in this section, whether such property is or is not in his possession at the time of such conversion or secreting, shall be guilty of larceny, and shall, if the value of the property stolen exceeds one hundred dollars, be punished by imprisonment in the state prison for not more than five years or by a fine or not more than six hundred dollars and imprisonment in jail for not more than two years; or, if the value of the property stolen does not exceed one hundred dollars, shall be punished by imprisonment in jail for not more than one year or by a fine of not more than three hundred dollars; or, if the property was stolen from the conveyance of a common carrier or of a person carrying on an express business, shall be punished for the first offense by imprisonment for not less than six months nor more than two and one half years, or by a fine or not less than fifty nor
*632 more than six hundred dollars, or both, and for a subsequent offence, by imprisonment for not less than eighteen months nor more than two and one half years, or by a fine of not less than one hundred and fifty nor more than six hundred dollars, or both.”
Allegations Numbers Six, Seven, Eight, Nine, Ten and Eleven:
The crime of breaking and entering in the daytime is defined in section 18 of chapter 2,66 of the Massachusetts Annotated Laws, volume 9, part IV, as follows: “ § 18, Entering Dwelling House in Night Time, or Breaking, etc., without Putting in Fear, in Day Time. Whoever, in the nighttime, enters a dwelling house without breaking, or breaks and enters in the day time a building, ship or vessel, with intent to commit a felony, no person lawfully therein being put in fear, shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than five hundred dollars and imprisonment in jail for not more than two years.”
Allegation Number Twelve :
The crime of burglary as defined in articles 1389 and 1390 of Vernon’s Annotated Criminal Statutes of the State of Texas — Penal Code, volume 3, is as follows:
“ Art. 1389. ‘ Burglary ’. The offense of burglary is constituted by entering a house by force, threats or fraud, at night or in like manner by entering a house at any time, either day or night, and remaining concealed therein, with the intent in either case of committing a felony or the crime of theft.”
“ Art. 1390. ‘ Burglary ’ by breaking. He is also guilty of burglary, who, with intent to commit a felony or theft, by breaking, enters a house in the daytime.”