JIMMY WAYNE COX v. STATE OF ARKANSAS

CR 73-86             499 S.W. 2d 630

Opinion delivered October 8, 1973

*Jimmy L. Featherston,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Deputy Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Jimmy Wayne Cox, appellant herein, on September 22, 1972, entered a plea of not guilty to a charge of burglary and grand larceny; however, on October 3, 1972, Cox, being represented by a retained attorney, changed his plea, entering a plea of guilty to the offenses charged and with being an habitual criminal. The Pike County Circuit Court sentenced Cox to twenty-one years for burglary and twenty-one years for grand larceny, the sentences to run concurrently. Approximately two weeks later, appellant prayed for an appeal from the sentence imposed, this being denied by the circuit court because of the plea of guilty. In November and December, appellant filed petitions for a Writ of Habeas Corpus and for a hearing under Criminal Procedure Rule I, alleging that his guilty plea was entered under duress; that the State failed to show a *prima facie* cause for arresting him; that he had been arrested on a misdemeanor charge and evidence obtained from an illegal search of his automobile resulted in the felony charges. A hearing was granted, and conducted on January 30, 1973, petitioner being represented by court-appointed counsel, the court pointing out, however, that it was only going to hear evidence on the allegation that the guilty plea was entered under duress. Evidence was taken and the petition was denied, and from the order denying relief, appellant brings this appeal.

Cox testified that he thought he would get a lighter sentence when he pleaded guilty, although he admitted that his attorney told him that he didn't know what amount of time he would receive; he also stated that he "had no idea" what sentence he would receive. Subsequently, however, he stated that he had been informed on the same morning of the sentencing that he was going to be sentenced to twenty-one years.[1] He also testified that he was placed under duress because he had learned that his brother, Jester Cox, would testify that he (Jester) had

---

[1] Of course, he received two twenty-one year sentences, but it was ordered that they run concurrently.

received the two guns, which had been stolen, from him (appellant), and he also stated that knowing that he would be sentenced as an habitual criminal placed him under duress. His testimony relative to this last is rather jumbled and it is not at all clear how this charge placed him under duress to plead guilty. Cox admitted that he was told that he was entitled to a jury trial. To practically every question asked by the court as to the proceedings on the date the plea was entered, appellant would simply answer that he was under duress. Jester Cox testified that he too was charged with burglary and grand larceny, and had originally told officers that he bought the two guns from a man on the highway, but after being told that "wouldn't work", changed his statement and implicated his brother. He said that he had stated he received the guns from his brother, but that actually he bought them from a man in Oklahoma. Jester Cox had received a three year suspended sentence. Retained counsel for Jimmy Wayne testified that the latter was advised of all of his rights and that appellant had told him in the presence of his brother that he desired to change his plea to guilty.

The record of the proceedings makes it quite clear that Cox was advised by the trial court of his right to a trial by jury, was advised that he was entering a plea of guilty to burglary and grand larceny as an habitual criminal, with the court specifically mentioning that it was alleged that he previously had been convicted of four or more felonies.

We very quickly hold that there is no showing that appellant entered his plea under duress. There is no proof, nor allegation, that he was "pressured" into entering the plea by any sheriff or policeman, member of the prosecuting attorney's office, his own counsel, or the court. It is not asserted that he was under duress from his brother, or any other individual. It simply appears that Jimmy Wayne decided the advisable thing to do was to plead guilty. Of course, there are many reasons why one may decide to plead guilty; he might learn that several persons that he had not known about had witnessed the commission of the felony; he might discover, contrary to his original belief, that he could be positively identified as a par-

ticipant in the crime, etc. The fact that another participant in the crime, even a brother, decides to change a plea of not guilty to guilty certainly does not establish duress, although it may well influence a defendant to change his plea. After all, it is to be doubted that any defendant would enter a plea of guilty if he thought he would be acquitted by a jury, or even if he thought he would receive a lesser punishment. So—it may well be that the brother's statement that he had received the guns from appellant, and the fact that he was charged with being an habitual offender, could have carried some weight in appellant's deliberations of whether a plea should be entered—but, as stated, there is not a line of evidence that anyone pressured Jimmy Wayne Cox into entering a plea; it seems entirely clear that this was his own decision.

As to his argument that an illegal search was made of his car, we have held repeatedly that a plea of guilty, which was not coerced or obtained under duress, waived any defenses that might have been interposed on trial. In *Rimmer* v. *State,* 251 Ark. 444, 472 S.W. 2d 939, this court said:

> "The plea of guilty, which is not shown to have been coerced, had the effect of waiving defenses that might otherwise have been interposed. *McMann* v. *Richardson,* 397 U.S. 759 (1970); *Brady* v. *United States,* 397 U.S. 742 (1970)."

See also *Treat* v. *State,* 253 Ark. 367, 486 S.W. 2d 16, where an argument somewhat similar to the one here presented was mentioned by this court. We said:

> "Finally, it is contended that the court erred in not setting aside the plea of guilty to the charge of kidnapping, it being argued that the negotiated plea of guilty to this offense was brought about by the untrue testimony of the prosecuting witness which had been responsible for his conviction of assault with intent to rape; in other words, if he had not been found guilty by the jury, he would not have entered a plea of guilty. We find no merit in this contention. The record reflects that no complaint was made by

appellant concerning his representation and that the attorney who originally represented him explained thoroughly the effect of the plea of guilty to the charge; \*\*\* though it has no bearing on the legal question involved, it is noted that it was ordered that the sentence given under the plea of guilty was to run concurrently with the sentence rendered in accordance with the jury verdict."

It is next argued that there were only two lawful prior offenses alleged, and appellant was illegally sentenced under the Habitual Criminal Act. It is stated that Cox was first convicted as a juvenile, and this does not count as a felony conviction. This was a conviction on January 21, 1964, and the record shows that he entered a plea of guilty in the Pike County *Circuit* Court—and not in Juvenile Court. On April 7, 1965, there was another conviction for grand larceny, and there does not appear to be any question but that this constituted a felony conviction. On January 18, 1967, appellant entered a plea of guilty to three different counts of burglary, Cox being sentenced on each charge to a term of four years, sentences to run concurrently. The proof reflected that there were three distinct offenses, a burglary at O. D. Tipton's Grocery at Umpire, Arkansas, a burglary at Joda's at Nashville, Arkansas, and a burglary at Freel's at Nashville, Arkansas. It is argued that the plea of January 18 should be treated as one conviction. We do not agree. While the point was not directly passed on in *Thom, etc.* v. *State,* 248 Ark. 180, 450 S.W. 2d 550, there was some discussion of the contention. We said:

"Here appellant argues that for purposes of imposing sentence under the habitual criminal statute, appellant should have been sentenced under sub-section 2 of Ark. Stat. Ann. § 43-2328 instead of sub-section 3. He then argues that we should adopt the reasoning of *State* v. *Simpson,* (Wash. 1929) 277 P. 998, which holds that a conviction under a habitual criminal statute on an information containing two or more counts arising out of acts committed simultaneously should amount only to one offense. The State on the other hand argues that we should follow those states holding to the contrary. Under the record here we find

that we need not answer either argument because of the nature of the record.

"The information to which appellant pleaded guilty alleges, '(T)hat defendant was convicted of second degree burglary and sentenced to two to five years in 1962 in the State of Indiana; defendant was convicted of two counts of burglary and one count of grand larceny in Sebastian and Scott Counties in 1966 and was sentenced to three years.' It is difficult for us to understand how a person could commit two burglaries simultaneously or commit two burglaries simultaneously in two different counties, even if we could construe the 1966 grand larceny charge as growing out of a simultaneous act committed in one of the burglaries."

Here, to paraphrase, it is difficult for us to understand how a person could commit two burglaries simultaneously in two different towns, or of two different establishments in the same town. Our habitual criminal statute (Ark. Stat. Ann. § 43-2328 [Supp. 1971]) refers to "any person convicted of any offense" *** the "second offense" *** the "third offense" *** the "fourth or subseuqnet offense." Certainly the burglaries at O. D. Tipton's Grocery in Umpire, Arkansas, Joda's at Nashville, Arkansas and Freel's at Nashville, Arkansas are all three different burglaries, i.e., different offenses, and the plea of guilty to each one constituted conviction for a different offense. We like the logic of the Louisiana Supreme Court in the case of *State of Louisiana* v. *Williams,* 77 So. 2d 515. There, Williams was accused of being a fourth offender, having previously been convicted and given consecutive sentences of three years each in three different cases, all convictions occurring on the same day. The trial court concluded that Williams could only be sentenced as a second offender, since it viewed the three previous convictions on the same day as constituting only one conviction. The Supreme Court reversed this holding, stating:

"The district judge, noting that the alleged three previous convictions occurred on the same day (although for separate crimes), reasoned that under the multiple

offender statute the 'Enhanced punishment for one who "commits" an offense *after* having previously done so, necessarily contemplates an interval between the previous "conviction", and the "commission" of the next offense.' Accordingly, he concluded that the defendant could be sentenced only as a second offender (he viewed the three previous concurrent convictions as constituting, for the purpose of the statute, merely one conviction); and he ordered 'that the State elect which one of the three previous convictions alleged to have occurred in the State of Alabama it will proceed upon, and insofar as the remaining two convictions, it is ordered that same (bill of information) be quashed, set aside, and held to be of no effect.'

"Alleging that the ruling of the trial court was contrary to our interpretation of the statute and our holding in *State* v. *Clague*, 224 La. 27, 68 So. 2d 746, 747, the state, by means of an application for remedial writs, successfully invoked our supervisory jurisdiction.

"In the *Clague* case (the factual situation of which was substantially identical with that presently under consideration) the defendant, immediately following his conviction on April 30, 1953 for simple burglary, was charged and sentenced pursuant to the provisions of the multiple offender statute as a triple felonious offender, he having been convicted and sentenced in 1951 for two similar crimes committed on the same date in adjoining premises of a double structure. At no time was he charged and sentenced as a second offender. In affirmation of the trial judge's action this court observed: 'We do not think that it is necessary for the defendant to have been charged as a double offender in order that he might be charged as a triple offender. What is mandatory is that he has been tried and convicted of two previous offenses. * * *

'The punishment is for the third crime, and it is heavier because the accused has become an habitual offender. The defendant becomes a third offender at the time he commits the third crime, and the punishment is incurred at that time. ***'

"With the view and for the purpose of having us overrule the *Clague* decision the argument is made that under multiple offender legislation, which is directed at recidivism, 'The increased penalties for habitual offenders are not intended to follow according to a numerical count of the offender's crimes, but are imposed for his successive failures to rehabilitate himself. The result is that two or more offenses of a contemporaneous nature amount to but one offense.'

"This argument might be effective if addressed to the lawmakers. But with respect to a judicial interpretation of the particular statute under consideration it has no merit."

We agree with the trial court that the petition was without merit.

Affirmed.