PEOPLE v PREUSS

Docket No. 83218. Argued March 6, 1990 (Calendar No. 1). Decided
September 28, 1990.

David A. Preuss pled guilty in the Oakland Circuit Court, Robert
L. Templin, J., of breaking and entering an occupied dwelling
with the intent to commit larceny and of being a fourth-time
habitual offender. After moving unsuccessfully to withdraw the
pleas, he argued in the Court of Appeals that his habitual-
offender conviction should be reduced from a fourth- to a third-
offender conviction because the two prior convictions for which
he was sentenced on the same date should count as only one
prior conviction. The Court of Appeals, BEASLEY, P.J., and
McDONALD and J. P. JOURDAN, JJ., affirmed the defendant's
conviction in an unpublished opinion per curiam, but remanded
the case for resentencing, finding that the defendant's two
convictions resulted in only one opportunity to reform (Docket
No. 101095). The people appeal.

In an opinion by Justice CAVANAGH, joined by Chief Justice
RILEY and Justices BRICKLEY and GRIFFIN, the Supreme Court
*held:*

MCL 769.12; MSA 28.1084 does not require that a fourth
offender's three prior convictions, the sentences for those con-
victions, or the offenses upon which those convictions and
sentences are based, occur in any particular sequence, but only
that the fourth offense be preceded by three convictions of
felony offenses, and that each of those three predicate felonies
arise from separate criminal incidents.

1. MCL 769.12; MSA 28.1084, the fourth-offender statute,
provides that a defendant who has been convicted of three or
more felonies, attempts to commit felonies, or both and com-
mits a subsequent felony, is to be punished as a fourth offender.
Multiple convictions arising out of a single incident count only

REFERENCES

Am Jur 2d, Habitual Criminals and Subsequent Offenders §§ 4, 6,
10, 14.

Chronological or procedural sequence of former convictions as
affecting enhancement of penalty for subsequent offense under
habitual criminal statutes. 24 ALR2d 1247.

as a single prior conviction. Thus, in order to be convicted as a fourth offender, a defendant must have been involved previously in three, separate criminal incidents.

2. The language of the fourth-offender statute contains no requirement that a fourth offender's three prior convictions must be for three offenses separated by intervening convictions or sentences. There is no legislative purpose or policy that is clearly contradicted by failing to read such a requirement into the statute's language, nor does this plain reading of the statute generate absurd or unjust results. The legislative history of the statute suggests that it was directed at the persistent or repeat offender, not at a person who in only one criminal episode managed to commit several different crimes. Instead, "repeat" suggests some time interval between crimes, and "persistent" suggests a criminal who continues in criminal pursuits after such intervals. To the extent that some of the reasoning in *People v Stoudemire*, 429 Mich 262 (1987), conflicts with the decision in this case, it is modified.

3. In this case, because the defendant had previously been convicted of three felonies when he committed his fourth offense, each of those three felonies having arisen from separate criminal incidents, he was properly convicted and punished as a fourth offender:

Justice BOYLE, concurring, stated that, in general, a defendant who voluntarily pleads guilty while represented by counsel waives all nonjurisdictional objections, but joined in the reasoning and result of the majority because the prosecution did not raise the question of preservation of the issue.

Justice LEVIN, concurring in part and dissenting in part, stated that the holding of *People v Stoudemire*, 429 Mich 262 (1987), that multiple convictions arising out of a single incident may count as only a single prior conviction for purposes of the habitual offender statute, should be adhered to, and its rationale should be applied in this case.

The defendant's first two felony convictions could not have triggered the sentence enhancement provision of MCL 769.10; MSA 28.1082. Both convictions counted, in effect, as only one for purposes of the habitual offender provisions because they had been committed before the defendant had been convicted of either offense.

Read as a whole, the habitual offender provisions evidence a legislative intent that the fourth-offender provision would be applicable only where the defendant earlier would have been subject to the provisions for second and third felony offenders. The Legislature's purpose in enacting the habitual offender

provisions, as set forth in *Stoudemire*, was to afford an opportunity to reform. The majority's application of the provisions is haphazard. No legislative purpose would be served by allowing a defendant who is less incorrigible to be sentenced more severely than a defendant who is more incorrigible.

The premise of the majority's analysis, that the Legislature intended that after a defendant has once been convicted, it is only the number of felony convictions that determines the correct place on the habitual offender continuum, is inconsistent with a statutory regime that emphasizes in its literal language not only the total number of felony convictions, but also that there was a prior felony conviction at the time the most recent felony was committed. The question is not whether the defendant in this case, or any other defendant with multiple felony convictions, is an habitual offender. The question is whether an habitual offender is to be sentenced consistent with the gradations established by the Legislature as a second, third, or fourth felony offender.

Justice ARCHER, concurring in part and dissenting in part, stated that a defendant who commits a felony after having been convicted previously of three felonies which arose out of the same criminal transaction should be charged under the habitual offender statute as a fourth offender. The habitual offender statute is clear and unambiguous on its face. The statute provides that a person who is convicted of a felony and who is shown to be a fourth offender may receive an enhanced sentence. Literally read, the statute indicates that a person who has been convicted of three felonies which arose out of the same criminal transaction, and who commits a subsequent felony, may be sentenced as a fourth offender.

Reversed.

CRIMINAL LAW — FOURTH OFFENDERS — PRIOR CONVICTIONS.

    The fourth-time habitual offender statute does not require that a fourth offender's three prior convictions, the sentences for those convictions, or the offenses upon which those convictions and sentences are based, occur in any particular sequence, but only that the fourth offense be preceded by three convictions of felony offenses, and that each of those three predicate felonies arise from separate criminal incidents (MCL 769.12; MSA 28.1084).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Robert C. Williams,* Chief,

Appellate Division, and *Michael J. Modelski,* Assistant Prosecuting Attorney, for the people.

*John D. Lazar* for the defendant.

CAVANAGH, J. The issue in this case is whether, under the fourth-time habitual-offender statute, MCL 769.12; MSA 28.1084, two of a defendant's three prior convictions must be counted as only one prior conviction whenever the defendant commits both offenses before being convicted of either, or is sentenced for both offenses on the same day. We hold that the statute does not require that a fourth offender's three prior convictions, the sentences for those convictions, or the offenses upon which those convictions and sentences are based, occur in any particular sequence. The statute requires only that the fourth offense be preceded by three convictions of felony offenses, and that each of those three predicate felonies arise from separate criminal incidents.

I

The defendant in this case was charged with breaking and entering an occupied dwelling with the intent to commit larceny and with possessing cocaine. Defendant allegedly committed both of these offenses on November 24, 1986. Defendant was also charged with being a fourth offender. The habitual-offender information alleged three prior convictions for breaking and entering, one for which defendant was sentenced June 26, 1986, and two for which he was sentenced December 3, 1985.[1]

---

[1] In his application for leave to appeal, the prosecutor alleged that defendant committed the earliest breaking and entering on June 8, 1985, and pled guilty of that crime on August 20, 1985, that he committed the next breaking and entering on June 13, 1985, and pled guilty on November 20, 1985, and that he committed the third

Defendant pled guilty of the breaking and entering and fourth-time habitual-offender charges, admitting the three prior convictions alleged in the habitual-offender information. After an unsuccessful motion to withdraw his guilty plea, defendant appealed in the Court of Appeals. In defendant's supplemental brief he argued, relying upon *People v Stoudemire,* 429 Mich 262; 414 NW2d 693 (1987), that his habitual-offender conviction should be reduced from a fourth-offender conviction to a third-offender conviction because the two prior convictions for which he was sentenced on the same date should count as only one prior conviction. The Court of Appeals agreed with the defendant that defendant's two convictions resulted in only one opportunity to reform, and ordered resentencing. We granted the prosecutor's application for leave to appeal to determine whether "defendant was properly convicted as a fourth-time habitual offender." 432 Mich 891 (1989).

II

In *Stoudemire,* p 278, we held that under the fourth-offender statute, "multiple convictions arising out of a single incident may count as only a single prior conviction . . . ." This holding, we stated, was consistent with the purpose of the statute, which we divined from the history of the statute. We reasoned that in order to be convicted as a fourth offender, a defendant must have been involved previously in three, separate criminal incidents, because

---

breaking and entering on May 15, 1986. Defendant does not dispute these allegations except to suggest that not only was he sentenced, but he was convicted, of the two earlier breaking and entering charges on the same day, December 3, 1985. The parties do not dispute that defendant committed two of his three prior offenses before he was convicted of either.

[t]he Legislature intended that the habitual of-
fender statute's fourth-felony provision . . . should
apply only to a person who had had three opportu-
nities to reform—who had been convicted and
sentenced and then subsequently committed an-
other felony for which he was also convicted and
sentenced, and then subsequent to the second
conviction committed yet another felony, for which
he was again convicted and sentenced. Upon this
person's conviction for yet a fourth felony, he
would be subject to the habitual offender act's
fourth-felony provision. He would be subject to
mandatory life imprisonment because he had
three times failed to reform, "because of the ap-
parent persistence in the commission of crime by
the person convicted and his indifference to the
laws . . . ." [*Id.*, p 271 (quoting *People v Palm*, 245
Mich 396, 401; 223 NW 67 [1929]). See also *Stoude-
mire*, pp 266, 268.]

Since *Stoudemire,* several panels of the Court of
Appeals have applied its reasoning to varying
factual scenarios to determine when a defendant's
prior convictions may be counted separately. Some
panels have interpreted *Stoudemire's* opportunity-
to-reform rationale in a limited manner, holding
that a defendant rejects an opportunity to reform
each time he commits another crime, even if he
was not convicted or sentenced for one crime
before committing the next, as long as the offenses
arose from separate incidents. Others, like the
panel below, have adopted the Court's statements
in *Stoudemire* that in order for a conviction to
count as a prior conviction under the statute, each
conviction must be for an offense committed after
conviction and sentence for a prior offense.

III

The prosecutor in this case asks that we reevalu-
ate our statutory analysis in *Stoudemire* and reject

the conclusions in that case concerning the Legislature's intent to limit the reach of the fourth-offender provision to defendants whose prior offenses are separated by intervening convictions and sentences.[2] We agree with the prosecutor that our statutory analysis of the habitual offender statute in *Stoudemire* was flawed. Although we need not disturb the precise holding of that case—that multiple convictions arising out of a single incident may count as only a single prior conviction under the statute—we conclude that a more accurate interpretation of the statute precludes many of the statements made there concerning the intent and purpose of the Legislature.

A

Since 1978, the fourth-offender statute has provided,

If a person has been convicted of 3 or more felonies, attempts to commit felonies, or both, . . . and that person commits a subsequent felony within this state, the person shall be punished upon conviction as follows . . . . [MCL 769.12; MSA 28.1084.]

Before that, the language was somewhat different:

A person who after having been 3 times convicted . . . of felonies or attempts to commit felonies, . . . commits any felony within this state . . . may be sentenced upon conviction of

---

[2] Although not expressly solicited by our grant order, arguments concerning the continuing validity of the *Stoudemire* rationale have been offered by both parties.

such fourth or subsequent offense to . . . . [1949
PA 56; 1929 PA 24; 1927 PA 175.][3]

While the original language of the statute clearly
requires that the fourth offense be committed after
the three prior convictions, and the present lan-
guage probably requires the same, neither con-
tains any requirement that a fourth offender's
three prior offenses, convictions, or sentences occur
in any particular sequence.

The Legislature's specification that the fourth
offense must follow three convictions, combined
with its omission of any similar requirement for
the second and third offenses, implies that no
particular sequence for the first three offenses or
convictions was intended. However, recognizing
the well-established principle that a literal reading
of a statute may be modified if that reading leads
to a clear or manifest contradiction of the appar-
ent purpose of the act, or if necessary to correct an
absurd and unjust result,[4] we must turn to sources
of legislative intent other than the language to
determine whether declining to read into the stat-
ute a sequentiality requirement for predicate of-
fenses would contradict the Legislature's purpose
in enacting the statute.

B

As in *Stoudemire*, we find it appropriate to
begin our analysis of legislative purpose with the
original enactment of 1927. 1927 PA 175 was the
culmination of the work of the Commission of

---

[3] The amendments of 1929 and 1949 changed only the penalties.
The Legislature's decisions to be more lenient with regard to repeat
offenders suggest no particular intent to alter either class of persons
to whom these penalties apply or the legislative purpose expressed in
the original 1927 statute. See *Stoudemire*, p 278.

[4] See *Stoudemire*, pp 267, 281; 2A Sands, Sutherland Statutory
Construction (4th ed), § 47.38.

Inquiry Into Criminal Procedure.[5] Sections 10, 11, 12, and 13 of chapter IX of the act mandated specific punishment and procedures for prior offenders.[6] In its report to the Legislature, the commission made special mention of these sections, suggesting that they were intended to remedy perceived deficiencies in the former statutes governing repeat offenders:

> We also call your attention to sections eleven, twelve, and thirteen of this chapter. These sections deserve your most earnest consideration. It will be observed that section thirteen provides that a person who has four times been convicted of a felony shall be imprisoned for life. It is interesting to note that section 15,613 of the Compiled Laws of 1915, one of the oldest criminal enactments of this State, has provided that a person who has been twice sentenced for the commission of a felony may be sentenced upon third conviction to life imprisonment. We do not find that this statute has been put into operation. We have, therefore, adopted section thirteen, which makes it mandatory to sentence to life imprisonment upon the fourth conviction.[7]

This passage from the report does not contain any express statement concerning the commission's intent regarding whether a defendant's prior convictions, offenses, or sentences must occur in any particular sequence in order for him to be subject to the fourth-offender penalties. However,

[5] 1927 Journal of the House 642 (Governor's message to the members of the Legislature regarding HB 80). See also Waite, *What is being done about crime,* 6 Mich St B J 100, 102 (Jan, 1927); Fead, *"Presidential Address—Judges' Association,"* 7 Mich St B J 39 (Dec, 1927).

[6] See HB 80, pp 88-91. As proposed, the sections were numbered 11, 12, 13, and 14.

[7] State of Michigan, Report of the Commission of Inquiry Into Criminal Procedure (1927), p 15 (available from the State of Michigan Law Library; hereinafter "Report").

because the commission regarded the prior repeat-offender statute as ineffectual, an examination of its provisions is instructive.

> When any person shall be convicted of any offense, and shall be duly sentenced therefor to confinement in the state prison of this state, for one year or more, and it shall be alleged in the indictment on which such conviction is had, and admitted or proved on the trial, that the convict has before been *sentenced to a like punishment* by any court in this state, or in any other of the United States, *for a period not less than one year,* he shall be sentenced to be punished by imprisonment in the state prison not more than seven years, in addition to the punishment prescribed by law for the offense of which he shall then be convicted. [1915 CL 15612. Emphasis added.]

> When any such convict shall have been twice before *sentenced to imprisonment at hard labor, for a period of not less than one year at each time,* by any court in this state, or in any other of the United States, he shall be sentenced to imprisonment at hard labor for life, or for a term of not less than seven years in addition to the punishment prescribed by law for the offense of which he shall then be convicted. [1915 CL 15613. Emphasis added.][8]

The repeat-offender provisions proposed by the commission were substantially different from these earlier provisions in several ways.[9] Most pertinent for our inquiry in this case, the new provisions did

---

[8] The language of these sections had remained the same, without amendment, since 1846. See 1846 RS, ch 161, §§ 12, 13.

[9] In *People v Palm, supra,* p 401, we observed, "[t]he mandatory provision" of the 1927 law was its "chief additional feature." The new sections did limit sentencing discretion. But they also increased the penalties for all repeat offenders and added an additional tier of punishment for fourth offenders. Another significant change was the procedural change contained in §§ 12 and 13. The 1927 act provided that in order for a person to be punished under the new provisions,

not require that the defendant have previously been twice sentenced to prison, for at least a year each time, before the enhanced punishment could be imposed. The 1927 act required only that the person have been "three times *convicted*" prior to committing the fourth offense. Thus, the new provision literally applied to defendants who had previously been convicted three times before they committed their fourth offense, even if they had not yet been sentenced on any or all of those prior convictions.[10]

The commission's decision to delete the sentencing requirement, combined with its statements that the overall purpose of the act was to make it tougher for criminals to avoid apprehension, conviction, and adequate punishment,[11] suggest that the commission's intent was that §§ 10, 11, and 12 apply to a broader class of criminals than they would have applied to had the prior language about prior sentences been retained. This history suggests that the commission did not intend § 12 to apply only to defendants who commit four felonies, each of the last three being committed after a previous *sentence,* as *Stoudemire* concludes was the Legislature's intent. The commission's report reflects the goal of punishing repeat offenders harshly, but does not particularly support an objective of punishing them only after they have three *separate times* disregarded the sobering message of a conviction *and sentence.*

---

he need not have been indicted and convicted as a previous offender, but need only have been given the procedural protections specified in § 13. 1927 PA 175, ch IX, § 12. Section 13 allowed the prosecutor to file information *after* conviction or sentence on the last offense accusing the defendant of the prior convictions, an option unavailable under the prior statute. The prior law required that the prior offense or offenses be alleged in the indictment and admitted or proven at trial. See *People v Campbell,* 173 Mich 381; 139 NW 24 (1912).

[10] The earlier statute would not have permitted this. See *People v Ellsworth,* 68 Mich 496; 36 NW 236 (1888).

[11] Report, n 7 *supra,* pp 4-7.

Because the Legislature ultimately adopted these sections of the commission's proposed code without change, the commission's views on these issues were presumably shared by the members of the Legislature who adopted its recommendations. See 2A Sands, Sutherland Statutory Construction (4th ed), § 48.09, p 316. Declining to read into the statute a requirement that a defendant's second offense must follow the conviction and sentence for his first offense, and that his third offense must follow the conviction and sentence for his second offense, certainly does not violate any expressed purpose of the commission or the Legislature.

C

In *Stoudemire,* as guidance for determining our own Legislature's intent in adopting §§ 10-13 of chapter IX of 1927 PA 175, we relied upon certain authorities interpreting the intent of the New York Legislature in adopting its "Baumes Laws." We reasoned, "By borrowing New York's statute in its entirety, the Legislature indicated that it was motivated by the same purpose that underlay the New York statute." *Stoudemire,* p 271.

1

While it is certainly possible that our Legislature adopted identical language for different reasons, the report of the commission bolsters our conclusion in *Stoudemire* that the 1927 Legislature was aware of the motivations behind the New York law, and that the intent of the New York Legislature in passing similar provisions, and to some extent the views of Senator Baumes, may reflect the purposes of our own Legislature in

passing these sections of 1927 PA 175.[12] See 2A
Sands, Sutherland Statutory Construction (4th ed),
§ 51.06, p 510; cf. *Evening News Ass'n v City of
Troy,* 417 Mich 481, 494-495; 339 NW2d 421 (1983).
However, regarding the nature of either Senator
Baumes' or the New York Legislature's intent, we
must depart from our prior conclusions in *Stoude-
mire.*

2

The language at issue in this case, in the New
York statute, and our own statute—having been
three times convicted—had been part of New York
law since 1907. Neither New York's 1907 law nor
the law as amended in 1926[13] contained language
concerning the sequence of the first three convic-

[12] The commission stated at page 4 of its report that it

> investigated with some particularity the work done in the
> State[ ] of New York . . . . The State of New York has up to
> the present time appointed two Commissions, both headed by
> Honorable Caleb H. Baumes, of Newburgh, an able attorney
> with long legislative experience. This Committee has done
> much in the way of securing data and in recommending impor-
> tant changes to the New York Legislature, some of which have
> been adopted. Your Commission is indebted to Mr. Baumes for
> valuable help and suggestions.

Also, in its discussion of the pertinent sections, the commission
noted that it had modified the Baumes Laws of New York:

> We have also provided increased penalties for second and
> third convictions and a prohibition against parole, in such cases
> before the expiration of the period recommended by the sen-
> tencing judge without the approval of such judge or his succes-
> sors. We believe this to be an improvement over the so-called
> Baumes law of New York. [Report, n 7 *supra,* p 15.]

As we observed in *Stoudemire,* the only substantive difference be-
tween § 12 of our 1927 act and the same New York provision was the
sentence regarding parole eligibility. The commission's comments
suggest that it carefully considered the language of New York's
provisions and concluded that nothing else needed modification.

[13] The 1926 amendment expressly excluded any requirement that
prior convictions be alleged in the indictment or proven at trial, and

tions, and sequentiality of the convictions was not litigated prior to the 1926 amendment. *People v Morse,* 62 NY2d 205; 476 NYS2d 505; 465 NE2d 12 (1984). So, at the time our Legislature adopted the New York law, there were no New York decisions interpreting whether this language required that a former offender's prior convictions be sequential.

Furthermore, even though their decisions shed little light on what our Legislature intended when it enacted 1927 PA 175, New York courts eventually interpreted the language at issue in this case *not* to require that the prior offenses or convictions occur in any particular sequence. All except one held that the three prior convictions need not be sequential. *Morse, supra,* pp 219-220.[14] In *Stoudemire,* we relied erroneously on the only New York decision that held that a fourth offender's second and third offenses must each follow conviction and sentence on the earlier offense.[15] This decision was

added a provision requiring the imposition of fourth-offender penalties upon a prisoner already sentenced if previously undiscovered convictions later became known. See *People v Morse,* 62 NY2d 205, 219-220; 476 NYS2d 505; 465 NE2d 12 (1984).

[14] See *People ex rel Bravata v Morhous,* 186 Misc 893, 896; 63 NYS2d 451 (1946) ("I can find no justification for reading into the statute a legislative intent that, in substance, one is not to be treated as an habitual criminal unless the repeated offenses of which he has been convicted occurred after the serving of a sentence and the lapse of a period of time between convictions and sentencings to meditate upon the advantages or disadvantages of a further life of crime"), aff'd 273 AD 929; 77 NYS2d 451 (1948); *Terwilliger v Turk,* 156 Misc 246, 248; 281 NYS 527 (1935) ("To make a defendant a fourth offender, under section 1942, the order of the commission and conviction of the first three offenses is immaterial. All that is necessary is that the three convictions precede the commission of the fourth offense. The section says so."). Accord *People ex rel Reynolds v Morhous,* 268 AD 843; 50 NYS2d 272 (1944); *People ex rel Terwilliger v Brophy,* 256 AD 894; 9 NYS2d 25 (1939); *Terwilliger v Eaton,* 164 Misc 776; 299 NYS 351 (1937); *People ex rel Ploiser v Warden of Auburn State Prison,* 193 Misc 596; 84 NYS2d 43 (1948), aff'd 274 AD 1086; 86 NYS2d 112 (1949); *People v Taylor,* 13 NY2d 675; 241 NYS2d 166; 191 NE2d 670 (1963), aff'd 16 AD2d 944; 229 NYS2d 862 (1962); *People v Freggans,* 79 Misc 2d 144; 359 NYS2d 635 (1974).

[15] *People v Spellman,* 136 Misc 25; 242 NYS 68 (1930).

not only clearly at odds with the weight of authority in New York and unavailable when our Legislature adopted the pertinent language, it relied on three cases that did not address the same issue.[16]

In *Stoudemire,* we quoted statements of Senator Baumes[17] and relied on them for our conclusion

[16] *People v Bergman,* 176 AD 318; 162 NYS 443 (1916), and *People ex rel Gaczewski v Jennings,* 223 AD 78; 228 NYS 373 (1928), both concerned New York's second offender statute which required that a defendant's second offense follow his first conviction. *People v Schaller,* 224 AD 3; 229 NYS 492 (1928), concerned only whether a defendant's two pleas could be counted as prior convictions at all when neither was followed by judgment or sentence.

[17] I must speak to you a moment about the Fourth Felony Offender Act, the one that has received more discussion and criticism than any other of the twenty so-called Baumes laws, the act that requires a judge, if a man is convicted the fourth time of a felony, which means a serious crime, he must send him to state's prison for life.

The theory of the Fourth Offender Act is not punishment at all, but it is protection to the public. *The man who has been convicted once, twice, three times, sentenced and served his time and come out and resumed operations again has proven to you and to me that he cannot learn his lesson. He is incurable. He is non-reformable. And either he cannot or he will not adjust himself to the fixed and settled rules and regulations of society and civilization.* And it matters not whether it is because he cannot or because he will not—the result is just the same. That is to say, *he is anti-social. He is a habitual criminal,* a menace to society, and as such should be segregated from society for the good of society and perhaps for his own good as well.

That is one thing I wish to make clear to you. It is not cruelty; it is not torture; it is not with the idea of punishing this man any more. But he is not a safe man to have at large in the community where you and I live. It is dangerous to have him loose. When this law was passed they said to us, "You will fill the prisons to overflowing if you pass that." Well, as a matter of fact, the prisons of New York were filled to overflowing before we passed that law. But I do not believe it. Leave these laws just as they are on the statute books for five years, and I am firmly of opinion that for every prison cell you fill with a life termer you will empty three.

Again on the subject of the Fourth Offender Act, we say it is playing fair with the criminal to write plainly in the statute books, *if he has already been convicted of three serious crimes, what we call felonies in the law, and is again convicted, that there is no alternative to the court but to send him to prison for life; so that we give him a chance to watch his step;* and I

that the New York Legislature intended the act to punish only those "who had been convicted and sentenced and then subsequently committed another felony for which he was also convicted and sentenced, and then subsequent to the second conviction committed yet another felony, for which he was again convicted and sentenced." *Stoudemire*, p 271. However, even assuming that our Legislature or the commission was exposed to the quoted statements or similar ones by Senator Baumes,[18] those comments do not establish Senator Baumes' intent on the issue of the sequentiality of prior convictions.

The quoted portion suggests only that Senator Baumes considered that the fourth-offender provision was directed at a defendant who had been previously convicted three times and committed his fourth offense after serving his sentences and after he had been given "a chance to watch his step." It suggests nothing about whether he or other New York legislators in 1907 or 1926 intended that the second offense occur after sentenc-

---

say that is in the interest of fair play to the criminal himself. [Address by Caleb H. Baumes, 1927 Am Bar Ass'n, Report 511-529 (reprinted in Johnsen, VI The Reference Shelf, *The Baumes Law* 95, 99-100 [New York: H W Wilson Co (1929)]). Emphasis added.]

[18] This assumption is speculative. The quoted comments were published sometime in 1927. The commission's report to the Legislature was delivered by February 8, 1927, the date HB 80 was introduced. As stated in 2A Sands, Sutherland Statutory Construction (4th ed), § 48.12, p 327 (emphasis added):

There is not necessarily a correlation between the understanding and intent of a draftsman and the understanding and intent of the legislature. There is reason to invoke an exception to the general rule and consider the draftsman's views *if those views were clearly communicated to the legislature and there is reason to believe that a legislator's understanding of the bill was influenced.*

ing for the first offense and the third offense occur after sentencing for the second offense.

Not only are Mr. Baumes' views ambiguous on sequentiality of a fourth offender's three prior convictions, his suggestion that the fourth offense must follow *a completed sentence* conflicts with the language of 1927 PA 175, which literally requires only that the commission of the fourth offense follow three prior "convictions," not sentences. The language of "conviction" replaced the language of our earlier statute which expressly required that the offender have previously been not only convicted but sentenced. See part III(B).

Finally, we concluded in *Stoudemire* that the New York Legislature endorsed the sequentiality theory for prior offenses by amending the statute in 1936 to prevent the separate counting of two or more crimes consolidated for charging or trial purposes. However, that conclusion is questionable, since it is contrary to New York's own courts' interpretation of that amendment. As the court stated in *People v Schultz*, 23 Misc 2d 620, 625; 198 NYS2d 814 (1960), aff'd 15 AD2d 948; 226 NYS2d 680 (1962), app dis 11 NY2d 1058 (1962), cert den 371 US 866 (1962),

> Some habitual offender statutes of other States require that each succeeding conviction to be counted must be subsequent to a previous conviction both in time of commission and in time of conviction. . . . This eliminates "same time" convictions altogether. *This is not the law in this State. The only exception to our general policy is the one specified in the consolidation clauses adopted in 1936.*[19] [Emphasis added.]

[19] See also *People v Gorney*, 203 Misc 512, 520-521; 103 NYS2d 75 (1951) (Had the Legislature intended to reject the result reached by the weight of authority in New York courts that predicate offenses need not be separated by intervening convictions, the language of the

In contrast to New York's history, our Legislature has never adopted any provision barring separate counting of multiple convictions for offenses consolidated for charging or trial, despite the Legislature's revisions of the statute in 1949, 1978, and 1988. See n 3 and 1988 PA 90.

In sum, a requirement that a fourth offender's three prior offenses be separated by intervening convictions and sentences need not be read into the language of our statute in order to accommodate any legislative purpose gleaned from New York law. Accord *Castle v Gladden,* 201 Or 353, 369-370; 270 P2d 675 (1954) (relying on New York law to interpret identical language, finding no sequentiality requirement).

D

*Stoudemire's* reliance on our own precedents as authority for a legislative purpose to limit the timing of prior convictions was misplaced as well. The statement we quoted from *Palm, supra,* p 401 in *Stoudemire,* p 270, is neutral regarding whether a fourth offender's prior offenses must be separated by intervening convictions. It states that there must be " 'repeated commissions' " of felonies, and that the person convicted must demonstrate " 'persistence in the commission of crime' " and " 'indifference to the laws . . . .' " Both of these attributes are demonstrated by a person who commits three separate felonies, is convicted and sentenced for them, and then commits a fourth offense, as well as by a person who commits one offense, is convicted and sentenced, commits another offense, is convicted and sentenced, commits

1936 amendment could have otherwise been qualified); *People ex rel Ploiser v Warden of Auburn State Prison,* n 14 *supra,* p 598.

a third offense, is convicted, then commits a fourth offense.

The *Palm* Court stated that the statute "evidence[d] a desire on the part of the people of the State to protect themselves from the acts of habitual violators of law." It reasoned that repeat offenders "are a menace to society, unfit for liberty, and should be deprived thereof." *Id.,* p 401. These statements describe a legislative purpose to punish repeat offenders harshly, regardless of whether they committed each of their offenses after a conviction and sentence.[20]

Also, for the reasons stated by Justice ARCHER in his dissent in *Stoudemire,* our reliance on *People v Podsiad,* 295 Mich 541; 295 NW 257 (1940), and *People v Lowenstein,* 309 Mich 94; 14 NW2d 794 (1944), was misplaced. *People v Sawyer,* 410 Mich 531; 302 NW2d 534 (1981), like *Podsiad* and *Lowenstein,* stands for the principle that an enhanced penalty for a second offense may be imposed only when a defendant commits the second offense after conviction of his first offense. That is not the question in this case, where the statute already requires that the commission of defendant's fourth offense follow the convictions of his prior offenses. Here, we are concerned only with whether the Legislature intended that those prior offenses and convictions be sequential.

Not only is the dicta in *Stoudemire* an unneces-

---

[20] The *Palm* Court's quotation of a passage from 8 RCL does not compel a different conclusion. Even if the passage, " 'it does no violence to any constitutional guaranty for the State to rid itself of depravity when its efforts to reform have failed,' " reflected our Legislature's intent, the statement is ambiguous on the precise question presented in this case. *Id.,* p 401. First, the statement is directed at why such statutes are constitutional, not who is included under the provisions of these statutes. Second, even if the statement describes the *Palm* Court's conclusion about who may be penalized under our fourth-offender provision, it is consistent with imposing that provision's penalties upon defendants who persist in committing felonies after being convicted three times, sequentially or not.

sarily broad reading of *Palm, Podsiad, Lowenstein,*
and *Sawyer, Stoudemire*'s statements that the sec-
ond, third, and fourth offenses committed by an
habitual fourth offender must each follow a *sen-
tence* for a prior offense conflict with our decision
in *People v Funk,* 321 Mich 617; 33 NW2d 95
(1948). In *Funk,* we rejected a defendant's conten-
tion that a conviction for which no sentence was
imposed could not be counted as a prior offense
under the fourth-offender provision and held:

> *The statute does not make imposition of sen-*
> *tence upon the previous convictions a prerequisite*
> *to the enhancement of punishment upon the*
> *fourth conviction.* The *conviction* is the finding of
> guilt. Sentence is not an element of the conviction
> but rather a declaration of its consequences. [*Id.,* p
> 621. Emphasis added. See also *People v Hatt,* 384
> Mich 302; 181 NW2d 912 (1970).]

Like the statute's legislative history, the deci-
sions of this Court preceding *Stoudemire* fail to
demonstrate a legislative purpose that would be
contradicted by declining to read into the statute a
requirement that the first, second, and third offen-
ses be separated by intervening convictions or
sentences.

E

In *Stoudemire* we also examined cases from
other jurisdictions interpreting statutes similar to
our own fourth-offender provision to determine
what our Legislature had in mind when it enacted
what is now MCL 769.12; MSA 28.1084. To the
extent that statements in *Stoudemire* suggest that
other jurisdictions support the conclusion that our
Legislature intended that a fourth offender's prior
offenses be separated by intervening convictions,
we reject those statements.

First, other jurisdictions' interpretations of similar, or even identical, language, is of only limited value in determining what our own Legislature intended, absent circumstances which suggest our Legislature considered these statutes or the decisions interpreting them when it enacted or amended the fourth-offender provision. See 2A Sands, Sutherland Statutory Construction (4th ed), § 51.06, p 510.

More important, the difference of opinion on the question in this case is much more balanced than that on the question examined in *Stoudemire.* As we noted in *Stoudemire,* almost every jurisdiction with similar statutory language has interpreted that language and its legislative history to require that predicate offenses arise from separate transactions. However, the same weight of authority does not support *Stoudemire's* reasoning that the Legislature intended to apply the fourth-offender statute only to defendants whose predicate offenses are separated by intervening convictions and sentences.

For example, several of those jurisdictions specifically relied upon in our opinion in *Stoudemire* do not support defendant's claim in this case.[21] Nevada has held that its statute, containing the phrase "previously been three times convicted" "does not require that the convictions and commissions of prior offenses occur in any particular sequence."[22] Hawaii adopted the same rule prohibiting the separate counting of convictions imposed for related offenses while allowing the separate

---

[21] Some of the jurisdictions cited as support in *Stoudemire* have statutes containing language not present in our own statute that supports the sequentiality theory. See, e.g., *State v Ellis,* 214 Neb 172, 172-173; 333 NW2d 391 (1983) (" 'Whoever has been *twice convicted of crime, sentenced and committed to prison* . . . .' " Emphasis added.); *State v Tillman,* 228 NW2d 38 (Iowa, 1975).

[22] *Carr v State,* 96 Nev 936, 939; 620 P2d 869 (1980).

counting of simultaneously entered convictions for separate offenses.[23] In addition, every United States Court of Appeals that has examined this issue has rejected the claim that predicate offenses under the federal habitual offender statute must be separated by intervening convictions or sentences, despite their equally unanimous agreement that the same statute prohibits separate counting of multiple convictions for offenses arising from the same incident.[24]

Among the states that enacted laws with wording like that in our statute which does not specify whether a third or fourth offender's prior crimes must be separated by intervening convictions or sentences, there is a split on this question. Some courts have held that their Legislatures intended that the sequentiality requirement be read into

[23] *State v Rodrigues,* 68 Hawaii 124, 132-133; 706 P2d 1293 (1985).

[24] See *United States v Gillies,* 851 F2d 492 (CA 1, 1988), cert den 488 US 857 (1988); *United States v Towne,* 870 F2d 880 (CA 2, 1989), cert den 490 US 1101 (1989); *United States v Schoolcraft,* 879 F2d 64 (CA 3, 1988), cert den 493 US 995 (1989); *United States v Herbert,* 860 F2d 620 (CA 5, 1988), cert den 490 US 1070 (1989); *United States v Schieman,* 894 F2d 909 (CA 7, 1990); *United States v Rush,* 840 F2d 580 (CA 8, 1988), cert den 487 US 1238 (1988); *United States v Wicks,* 833 F2d 192 (CA 9, 1987), cert den 488 US 831 (1988); *United States v Harden,* 846 F2d 1229 (CA 9, 1988), cert den 488 US 910 (1988); *United States v Greene,* 810 F2d 999 (CA 11, 1986).

Some of the reasons for this interpretation were explained in the dissenting opinion in the Third Circuit's en banc opinion in *United States v Balascsak,* 873 F2d 673, 687 (CA 3, 1989) (Greenberg, J., dissenting), reasoning later approved in *Schoolcraft, supra,* p 73, n 4. The dissent explained that characterizations of habitual offenders in the legislative history of the statute as "career criminals," "three-time losers," and "repeat offenders," "are as equally applicable to those who commit three crimes without any intervening convictions as to those who go through the judicial and penal systems between crimes." The dissent opined that under the contrary view, "the serial felon who is repeatedly arrested, but whose prosecution is delayed, will avoid the enhancement provision."

The federal statute was recently amended to require that a defendant's predicate offenses be " 'committed on occasions different from one another,' " but did not add any requirement that intervening efforts at rehabilitation separate each prior conviction. See *Balascsak, supra,* p 688 (Greenberg, J., dissenting).

the statute,[25] others have held that the same language, combined with legislative history, evidenced no such intent or purpose.[26]

These decisions illustrate that the policy concerns that our Legislature might have considered before adopting the 1927 act were not so one sided that we must now conclude it meant something it did not say. In defendant's favor is the view expressed in *State v Carlson*, 560 P2d 26, 30 (Alas, 1977):

> [W]hen a convicted criminal has not taken advantage of the opportunity to reform and subsequently commits another crime, he may be considered a worse offender than one with no previous convictions. It is then reasonable to subject him to harsher sanctions. However, where . . . two convictions occur on the same day, the opportunity for reformation is afforded to him only once, not twice.

One cannot refute the argument that a defendant who is proven to have ignored three, separate, postconviction opportunities to reform is "reasonably" deemed a "worse" offender, and more deserving of the harsh penalties in the habitual

---

[25] *State v Carlson*, 560 P2d 26 (Alas, 1977); *Hall v State*, 473 A2d 352 (Del, 1984); *State v Lohrbach*, 217 Kan 588; 538 P2d 678 (1975); *Cobb v Commonwealth*, 267 Ky 176; 101 SW2d 418 (1936); *State v Linham*, 93 NM 307; 600 P2d 253 (1979), cert den 444 US 846 (1979); *Dye v Skeen*, 135 W Va 90; 62 SE2d 681 (1950); *Joyner v State*, 158 Fla 806; 30 So 2d 304 (1947); *State v Rinier*, 93 Wash 2d 309; 609 P2d 1358 (1980). See also *Nunn v State*, 133 Tex Crim App 266; 110 SW2d 71 (1937).

[26] *Carr v State*, n 22 supra; *Castle v Gladden*, supra; *Watson v State*, 392 So 2d 1274 (Ala App, 1980); *State v Williams*, 226 La 862; 77 So 2d 515 (1955); *State v Angelucci*, 137 Vt 272; 405 A2d 33 (1979); *State v Brandt*, 110 Idaho 341; 715 P2d 1011 (1986); *Cox v State*, 255 Ark 204; 499 SW2d 630 (1973); *State ex rel Ves v Bomar*, 213 Tenn 487; 376 SW2d 446 (1964); *Smith v State*, 644 P2d 106 (Okla Crim App, 1982). See also *Gimmy v People*, 645 P2d 262 (Colo, 1982); *People v Braswell*, 103 Cal App 399; 284 P 709 (1930); *State v Montague*, 671 P2d 187 (Utah, 1983).

offender statute, than a defendant who is shown to have ignored only one postconviction opportunity to reform, even if both defendants have the same total number of convictions. But this argument certainly does not preclude a Legislature from deciding that the latter type of criminal is also worthy of the fourth-offender penalties. Just because a particular statutory scheme is more favorable to defendants, does not require a Legislature to choose it. See *Gimmy v People,* 645 P2d 262, 265-267 (Colo, 1982); *United States v Balascsak,* 873 F2d 673, 687 (CA 3, 1989) (Greenberg, J., dissenting). Also, our Legislature may very well have considered a sequentiality requirement unwise, given a defendant's ability to elude separate prosecutions for separate crimes and the advantages of resolving multiple charges at one plea or sentencing proceeding.

Without belaboring further the reasoning of the conflicting decisions from other jurisdictions, suffice it to say that they do not persuade us that we must give effect to a requirement concerning a fourth offender's prior convictions under our statute that does not appear in its language.

IV

Although we conclude that the legislative purpose behind the fourth-offender statute does not require that we read into the statute a requirement that a defendant's first, second, and third offenses be separated by intervening convictions or sentences, we believe there is sufficient indicia of legislative intent to support the narrow holding in *Stoudemire* that a defendant's prior offenses must arise from separate incidents. Therefore, although we no longer rely on much of the reasoning in *Stoudemire,* we do not overrule its holding.

The legislative history of the statute suggests that it was directed at the "persistent" or "repeat" offender. See parts III(B), (C), and (D). A common-sense interpretation of these phrases is that the Legislature did not have in mind the person who had only one criminal episode in which he managed to commit several different crimes. Instead, "repeat" suggests some time interval between crimes, and "persistent" suggests a criminal who continues in his criminal pursuits after these intervals. Neither of these concepts may easily be reconciled with an interpretation of the statute which would allow a court to impose fourth-offender penalties on a defendant whose three prior convictions arose out of the same criminal incident.

We need not take on the task of defining the scope of a criminal "transaction," "incident," or "episode" for purposes of the fourth-offender statute in this case, except to note that because defendant's two breaking and entering charges from June of 1985 were separated by several days and occurred at different locations, they were properly counted separately.[27] Because we conclude that even under *Stoudemire*'s same-incident test this defendant was properly convicted as a fourth offender, we need not reach whether *Stoudemire* is to be applied retroactively, a question raised by the prosecutor in this case.

V

The language of the fourth-offender statute contains no requirement that a fourth offender's three prior convictions must be for three offenses separated by intervening convictions or sentences. We find no legislative purpose or policy that is clearly

[27] The question whether more closely related crimes would qualify as separate incidents or episodes must await later case development.

contradicted by failing to read such a requirement into the statute's language, nor does this plain reading of the statute generate absurd or unjust results. To the extent that some of the reasoning in *Stoudemire* conflicts with our decision in this case, it is modified. Because the defendant in this case had previously been convicted of three felonies when he committed his fourth offense, each of those three prior felonies having arisen from separate criminal incidents, he was properly convicted and punished as a fourth offender. We reverse the judgment of the Court of Appeals and reinstate defendant's sentence.

RILEY, C.J., and BRICKLEY and GRIFFIN, JJ., concurred with CAVANAGH, J.

BOYLE, J. (*concurring*). In general, a defendant who voluntarily pleads guilty while represented by counsel waives all nonjurisdictional objections. *People v Johnson,* 396 Mich 424; 240 NW2d 729 (1976), cert den 429 US 951 (1976). However, the prosecution did not raise the question of preservation of the issue. I concur in the majority's reasoning and result.

LEVIN, J. (*concurring in part and dissenting in part*). I concur in the Court's decision to adhere to the holding in *People v Stoudemire,* 429 Mich 262, 278; 414 NW2d 693 (1987), that "multiple convictions arising out of a single incident may count as only a single prior conviction for purposes of the [habitual offender] statute." I dissent from the Court's decision not to apply in the instant case the rationale stated in *Stoudemire.*

I

Preuss' first two felony convictions could not have triggered the sentence enhancement provi-

sion of MCL 769.10; MSA 28.1082.[1] When Preuss was first sentenced, he could not have been sentenced as a second felony offender although he had twice been convicted of felonies arising from separate episodes. Those two felony convictions counted, in effect, as only one for purposes of the habitual offender provisions because he committed both offenses before he had been convicted of either offense. Nevertheless, under the majority's analysis, those same two convictions now count as two, and thereby trigger the sentence enhancement provision for a fourth felony offender[2] instead of the provision for a third felony offender.[3]

Read as a whole, the habitual offender provisions evidence a legislative intent that the fourth-offender provision would be applicable only where the defendant would have earlier been subject to the provisions for second and third felony offenders.[4]

---

[1] If a person has been convicted of a felony . . . and that person commits a subsequent felony within this state, the person shall be punished upon conviction as follows . . . .

Preuss did not commit his second felony offense after he had been convicted of his first felony offense. Rather, he committed his first two offenses before he had been convicted of either offense.

[2] MCL 769.12; MSA 28.1084.

[3] MCL 769.11; MSA 28.1083.

[4] When initially enacted, the habitual offender provisions were in a sense self-executing.

Section 10 provided that a second felony offender "*must* be sentenced to imprisonment for a term not less than one-half of the longest term nor more than one and one-half times the longest term prescribed for a first conviction of such offense." Section 11 provided that a third felony offender "*must* be sentenced to imprisonment for a term not less than the longest term nor more than twice the longest term prescribed by law for a first conviction of such offense." Section 12 provided that a fourth felony offender "*must* be sentenced upon conviction of such fourth or subsequent offense, to imprisonment in a state prison for the term of his natural life." 1927 PA 175, ch IX, §§ 10-12 (emphasis added).

Further, § 13 imposed a *duty* on the prosecutor to initiate habitual offender proceedings after a defendant's most recent felony conviction

II

Under the regime the majority attributes to the Legislature, defendants who have had the same number of opportunities to reform may receive dissimilar treatment. Some defendants who have had one opportunity to reform will be subject to punishment as a second offender, others as a third offender,[5] and still others as a fourth offender.[6] Some defendants who have had two opportunities to reform will be subject to punishment as a third offender and others as a fourth offender.[7]

This possibility of dissimilarity in treatment is not confined to defendants who have had the same number of opportunities to reform but who have a different number of felony convictions.

A defendant who committed three separate felonies before he was first prosecuted, convicted, and sentenced, and then committed, and was convicted of, one felony, could be sentenced as a fourth offender, but a defendant who committed one felony before he was first prosecuted, convicted, and sentenced, and then committed, and was convicted of, three separate felonies, could only be sentenced as a second offender. Although each defendant

where subsequently discovered information indicated the defendant had previously been convicted of a felony. Section 13 also imposed a *duty* on a warden and any other prison, probation, parole, or peace officer to report such subsequently discovered information to the local prosecutor. 1927 PA 175, ch IX, § 13.

[5] See, for example, *People v Hovey,* unpublished memorandum opinion of the Court of Appeals, decided November 3, 1988 (Docket No. 106798) (the defendant was charged as a third offender where his only two prior felony offenses had been committed before he was convicted of either offense).

[6] See, for example, *People v Reed,* 172 Mich App 182, 184-185; 431 NW2d 431 (1988) (the defendant was sentenced as a fourth offender on the basis of nine felony convictions arising from offenses committed during a five-day spree in 1976). See also *People v Hall,* unpublished opinion per curiam of the Court of Appeals, decided April 28, 1989 (Docket No. 110632).

[7] The instant case, for example.

would have had one opportunity to reform and have four separate felony convictions, one is subject to not more than a fifty percent increase in the possible maximum sentence[8] while the other is subject to a possible sentence of life imprisonment.[9] The defendant who had most recently committed three felonies—the person who had "learned his lesson" the least well—would face *less severe* sentence enhancement than the defendant who had most recently committed only one felony. This is backwards.

I do not believe the Legislature intended that the habitual offender provisions would be, or could be, applied in such an haphazard manner.[10] I am not aware of, nor does the majority suggest, any legislative purpose that would be served by allowing a defendant who is "less incorrigible" to be sentenced more severely than a defendant who is "more incorrigible." The premise of the majority's analysis—that the Legislature intended that after a defendant has once been convicted, it is only the number of felony convictions that determines his correct place on the habitual offender continuum— is inconsistent with a statutory regime that emphasizes in its literal language not only the total number of felony convictions, but also that there was a prior felony conviction at the time the most recent felony was committed.

The question is not whether Preuss, or any other defendant with multiple felony convictions, is an "habitual offender." The question is whether an "habitual offender" is to be sentenced—consis-

---

[8] See MCL 769.10; MSA 28.1082.

[9] MCL 769.12; MSA 28.1084.

[10] I am not persuaded that the Legislature's failure to expressly provide that the habitual offender provisions could not be applied in an haphazard manner is evidence of a legislative intent that the habitual offender provisions could be applied in an haphazard manner.

tent with the gradations established by the Legislature—as a second, third, or fourth felony offender.

Notwithstanding the majority's critique of the analysis in *Stoudemire*—some of which appears valid—I adhere to the belief that the opportunity-to-reform rationale set forth in *Stoudemire* is an accurate description of the Legislature's purpose in enacting the habitual offender provisions.

ARCHER, J. (*concurring in part and dissenting in part*). I write separately to express my concurrence with parts II and III of Justice CAVANAGH's opinion. However, for the reasons found in my dissent in *People v Stoudemire*, 429 Mich 262, 278; 414 NW2d 693 (1987), I respectfully dissent with the analysis appearing in part IV.