CAVANAGH, J.
(dissenting). This case considers the scope of Michigan’s habitual-offender statutes, MCL 769.10, 769.11, 769.Í2, and 769.13. Because I believe this Court has, until today, properly understood legislative intent and properly applied the habitual-offender *70 statutes to persons who persist in crime after having been convicted, I respectfully dissent.
The habitual-offender statutes, enhancing punishment for subsequent convictions, are plainly intended to apply to habitual offenders, individuals who persist in criminal activity regardless of their prior convictions. Defendant was sentenced under MCL 769.11(1) as a third-offense habitual offender. Defendant argues, and the prosecution does not contest, that the two underlying felonies supporting this sentence enhancement arose from the same criminal incident. In fact, there could not be a clearer case of felonies arising from the same criminal incident; the two prior convictions of possession of a firearm during the commission of a felony and felonious assault arose from the very same act committed on April 11, 1987.
Applying both of these convictions as predicates for a third-offense habitual-offender sentence enhancement would be invalid under People v Preuss, 436 Mich 714; 461 NW2d 703 (1990), People v Stoudemire, 429 Mich 262; 414 NW2d 693 (1987), and the uniform holdings of this Court since the Legislature enacted the habitual-offender statutes in 1927.[1] Preuss held that, for purposes of the habitual-offender statutes, each of the predicate felony convictions must “arise from separate criminal incidents.”[2] Preuss, 436 Mich at 717. Preuss affirmed the same holding found not only in Stou *71 demire, but also in People v Podsiad, 295 Mich 541, 547; 295 NW 257 (1940) (stating that the habitual-offender statutes are “inapplicable to convictions on different counts growing out of the same act”), and People v Lowenstein, 309 Mich 94, 100-101; 14 NW2d 794 (1944) (holding that multiple convictions from the same criminal transaction did not subject the defendant to additional punishment under the habitual-offender statutes). Clearly, the present defendant’s two previous felony convictions, arising from the same act, do not arise from separate criminal incidents. Under Preuss, defendant would be subject to sentence enhancement as a second-offense habitual offender, not as a third-offense habitual offender.
The majority overrules Preuss. Ante at 44. The majority asserts that this Court has failed to understand the language of the habitual-offender statutes since such statutes were enacted and, thus, incorrectly failed to count multiple offenses toward habitual-offender sentence enhancement. I disagree.
The language of MCL 769.11(1), and the statutory system of which it is a part, indicates that the Legislature intended to require that predicate felonies for habitual-offender sentencing arise from separate criminal incidents. “It is elementary that statutes in pari materia are to be taken together in ascertaining the intention of the legislature, and that courts will regard all statutes upon the same general subject matter as part of 1 system.” Dearborn Twp Clerk v Jones, 335 Mich 658, 662; 57 NW2d 40 (1953). MCL 769.10 is the first in a series of three statutes in the Code of Criminal Procedure that together allow enhanced penalties on an *72 increasing scale for an offender’s second,[3] third,[4] and fourth[5] offenses. MCL 769.10 states that “[i]f a person has been convicted of a felony. . . and that person commits a subsequent felony,” then that person is subject to a second-offense enhancement. (Emphasis added.) MCL 769.11 states that “[i]f a person has been convicted of any combination of 2 or more felonies . . . and that person commits a subsequent felony,” then that person is subject to what is usually termed a third-offense enhancement. (Emphasis added.) Finally, MCL 769.12 states that “[i]f a person has been convicted of any combination of 3 or more felonies ... and that person commits a subsequent felony,” then that person is subject to what is usually termed a fourth-offense enhancement. (Emphasis added.)
This system of graduated enhancements for subsequent felonies clearly indicates that the Legislature did not intend habitual-offender sentence enhancement to apply to simultaneous criminal acts. As this Court long ago recognized, “[i]t is obvious that the [provisions of the habitual-offender statutes] relate to convictions for subsequent felonies. They apply only to persons who, after having been convicted of one felony, commit an *73 additional crime, and are inapplicable to convictions on different counts growing out of the same act.” Podsiad, 295 Mich at 546-547 (emphasis added).[6]
In this case, defendant could not have been sentenced as a second-offense habitual offender when he was first convicted of the two underlying crimes committed at the same time. But now, without intervening convictions, defendant has been sentenced as a third-offense habitual offender because of simultaneous, not subsequent, convictions. The majority interprets the habitual-offender statutes as applying to multiple, simultaneous convictions. While this interpretation may, arguably, be supported by the language of the habitual-offender statutes, this Court’s longstanding, uniform interpretation is at least equally supported by the language of the statutes. I find the latter more convincing in light of the plain language of the habitual-offender statutes, the overall sentencing system prescribed by the Legislature, and legislative history.
The requirement that predicate felonies arise from separate criminal incidents is supported by this Court’s consistent statements concerning the purpose of the habitual-offender statutes. The statutes increase punishment because of a person’s “ ‘apparent persistence in the commission of crime ....’” People v Hendrick, 398 Mich 410, 416; 247 NW2d 840 (1976), quoting People v Palm, 245 Mich 396, 401; 223 NW 67 (1929). “The habitual criminal act was passed to provide a punishment for repeated commissions of felonies.” In re *74 Southard, 298 Mich 75, 78; 298 NW 457 (1941).[7] Obviously, persistence and repetition are not apparent when two convictions arise simultaneously from a single act.
This Court’s statements on the legislative intent behind the habitual-offender statutes have relied, to one degree or another, on legislative history. The majority denounces legislative history as a means of statutory construction. The majority implies that, by use of legislative history, a statute can be made to say whatever its interpreter wishes it to say. Ante at 56-58. If this were so, one imagines the majority could marshal evidence from legislative history supporting its interpretation of MCL 769.11. The majority cannot. Such evidence does not exist. The uniform evidence from legislative history supports the rule of Preuss, that crimes committed in a single criminal incident are counted as one for the purposes of the habitual-offender statutes.
The United States Supreme Court does not share the majority’s dim view of consulting legislative history when there are competing, arguably plausible interpretations of a statute.[8] Taylor v United States, 495 US 575; *75 110 S Ct 2143; 109 L Ed 2d 607 (1990), is the seminal case interpreting the scope of what was formerly called the Armed Career Criminals Act (ACCA), specifically 18 USC 924(e), a federal analog of MCL 769.11 involving firearms offenses. In Taylor, the Supreme Court identified plausible alternative interpretations of the scope of certain statutory language in a particular provision of the ACCA. The Court then stated: “Before examining these [plausible, alternative interpretations], we think it helpful to review the background of [18 USC 924(e)].” Id. at 581. The Court then conducted a rigorous review of legislative history related to the statutory language in question. Id. at 581-590.
I agree with the United States Supreme Court: legislative history should not be ignored when it may illuminate a court considering reasonable, alternative interpretations of a statute. Where, as here, legislative history singularly supports one arguably reasonable interpretation of a statute over another, it is a worthy guide to the proper choice between the interpretations.[9] The former interpretation of MCL 769.11, given by this Court from the enactment of the law in 1927 to today, is *76 reasonable. It is supported by the language of the statute. It is also uniformly supported by legislative history.
Further, when there are plausible, competing interpretations of a criminal statute, the rule of lenity should apply. “ ‘[W]hen there are two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language.’ ” Scheidler v Nat’l Org for Women, Inc, 537 US 393, 409; 123 S Ct 1057; 154 L Ed 2d 991 (2003), quoting McNally v United States, 483 US 350, 359-360; 107 S Ct 2875; 97 L Ed 2d 292 (1987). In other words, when there are two plausible meanings, the more lenient should apply when years of a person’s life are at stake. The majority isolates a statute outside its clear statutory scheme to arrive at the harsher result. But even if the majority’s interpretation is plausible, the rule of lenity should apply, and the rule of Preuss, expressing the consistent holdings of this Court, should stand.
The majority lists several statutes from other jurisdictions as examples of habitual-offender statutes with language clearly requiring that predicate felonies arise from separate criminal episodes.[10] Ante at 60-61. Among these is the ACCA, a federal habitual-offender statute, as mentioned. The majority notes that the federal statute contains express language stating that predicate *77 felonies must be “committed on occasions different from one another . . . 18 USC 924(e)(1). What the majority fails to observe is that at the time the United States Supreme Court implied, and the United States Court of Appeals for the Eighth Circuit held, that predicate felonies used under federal habitual-offender statutes must be committed on occasions different from one another, the statute did not expressly say that. Rather, the courts reviewed legislative history to conclude that this must be the meaning of the statute. Congress amended the statute after the courts so held, and, in fact, Congress relied on the court rulings to so amend the statute.[11]
The majority repeatedly implies that changes in the statutory language have altered the habitual-offender statutes to the extent that they now apply to crimes committed during the same criminal transaction, but the majority fails to identify the changes in the language that would have had this effect. That is because there are no such changes or language. The 1978 statutory revisions relate to the time of conviction; they do not relate to the timing of the commission of the underlying crimes.
In Preuss, we reviewed the 1927 and the 1978 statutory language. We concluded that the language, both before and after amendment, required only that the defendant have been convicted of a felony before commission of the crime for which the enhanced sentence was being imposed. We revised Stoudemire’s holding that the sentence for a previous crime must have been *78 completed before that crime could be used in counting predicate felony convictions. Thus, analyzing MCL 769.12, we stated that the statute applies “to defendants who had previously been convicted three times before they committed their fourth offense, even if they had not yet been sentenced on any or all of those prior convictions.” Preuss, 436 Mich at 724. Yet we found nothing in the amended language to compel a change in the longstanding requirement that “multiple convictions arising out of a single incident may count as only a single prior conviction under the statute.” Id. at 720.
The amended language does not relate to the timing of the commission of the underlying crimes; it relates only to the timing of the convictions for them. The majority does not show precisely how the amended language relates to the timing of the commission of previous crimes. The majority’s overruling of a century and a half of Michigan jurisprudence is not based on the 1978 revisions.[12] Again, in more than 150 years, no Michigan court has ever held, until today, that convictions for multiple crimes committed in a single criminal transaction count as separate convictions for habitual-offender purposes. See Palm, 245 Mich at 400.
*79 The majority asserts that its ruling is “arguably simpler to apply in practice” than the longstanding same-incident rule. Ante at 62. While it may be true that it is easier to count multiple felonies than to discern whether prior convictions arose from a single criminal incident, that does not mean that the Legislature intended the habitual-offender statutes to apply in that manner. Further, the longstanding rule that convictions arising from the same incident be counted as one conviction for habitual-offender purposes has not proved difficult to interpret or particularly susceptible to judicial discretion.[13] The rule has been workable since the statutes were enacted.
The defendant in this case has been sentenced to imprisonment for five years as a second-offense felony-firearm offender. MCL 750.227b(l).[14] His simultaneous crimes have been counted for purposes of extending his sentence. Defendant will spend years, if not a lifetime, in prison. But defendant should be subject to further sentence enhancement as a second-offense, not a third-offense, habitual offender. The habitual-offender stat *80 utes apply to subsequent, not simultaneous, felonies. The statutes are intended to enhance the sentences of persistent criminals, not multiple offenders. Defendant’s 25-year minimum sentence is within the recommended minimum sentence range for a second-offense habitual offender, but, because the sentencing court incorrectly counted separate convictions arising from the same criminal incident, in fact arising from the same act, resentencing is required. People v Francisco, 474 Mich 82, 89-91; 711 NW2d 44 (2006). I would not overrule Preuss and the uniform holdings of this Court that Preuss represents. I would remand this case to the sentencing court for it to impose a sentence on defendant as a second-offense habitual offender.
Kelly, J., concurred with CAVANAGH, J.

 The current habitual-offender statutes were enacted as 1927 PA 175. The relevant language was last amended by 1978 PA 77. However, in People v Palm, 245 Mich 396, 400; 223 NW 67 (1929), this Court observed that habitual-offender sentence enhancement was not “new” in this state; such statutes have been in force since 1857. This Court has never, until today, held that such statutes apply to multiple offenses committed on one occasion.

 Preuss specifically addressed MCL 769.12, the habitual-offender statute addressing three or more prior convictions, but that decision *71 applies to all three statutes specifying sentence enhancements in the common scheme of the habitual-offender statutes.

 Section 10 of chapter IX of the Code of Criminal Procedure applies to a second offense and allows a sentence enhancement of no more than “IV2 times the longest term prescribed for a first conviction” of an offense otherwise punishable by less than life imprisonment. MCL 769.10(1)(a). See also MCL 777.21(3)(a).

 Section 11 of chapter IX of the Code of Criminal Procedure applies to a third or higher offense and allows a sentence enhancement of up to twice the longest term otherwise allowed for an offense punishable by less than life imprisonment. MCL 769.11(1)(a). See also MCL 777.21(3)(b).

 Section 12 of chapter IX of the Code of Criminal Procedure applies to a fourth or higher offense and allows a sentence enhancement of up to life imprisonment for offenses otherwise punishable by imprisonment for five years or more. MCL 769.12(1)(a). See also MCL 777.21(3)(c).

 The majority disagrees that the graduated enhancement scheme of the habitual-offender statutes implies that they are “inapplicable to convictions on different counts growing out of the same act.” Podsiad, supra at 547. But Podsiad, decided in 1940, demonstrates that this is hardly a novel understanding of the statutory scheme. There has been no change in the statutory language between 1940 and today that affects its inapplicability to “different counts growing out of the same act.”

 See also Palm, 245 Mich at 401 (stating that the basis for sustaining the habitual-offender statutes is that “ ‘the Legislature may require the courts to take into consideration the persistence of the defendant in his criminal course’ ”) (citation omitted), Lowenstein, 309 Mich at 100-101 (stating that “the fact that defendant was convicted and sentenced on both counts” does not “result in conviction for two felonies such as to subject the defendant to additional punishment under the habitual criminal act”), and People v Hatt, 384 Mich 302, 306-307; 181 NW2d 912 (1970) (stating that the “only purpose of [the habitual-offender statutes] is to impose a longer sentence because of the apparent persistence by the defendant in the commission of acts of a criminal nature”).

 See, e.g., Safeco Ins Co of America v Burr, 551 US 47; 127 S Ct 2201; 167 L Ed 2d 1045 (2007) (extensively reviewing legislative history of the Fair Credit Reporting Act); Ledbetter v Goodyear Tire & Rubber Co, Inc, 550 US 618; 127 S Ct 2162; 167 L Ed 2d 982 (2007) (referring to legislative *75 history of title VII of the Civil Rights Act of 1964). In Wilkie v Robbins, 551 US 537, _; 127 S Ct 2588, 2606 n 12; 168 L Ed 2d 389 (2007), the Court stated that “we know that Congress patterned the [Hobbs] Act after two sources of law: ‘the Penal Code of New York and the Field Code, a 19th-century model penal code.’ ” (Citations omitted.) This legislative history regarding the statutory sources offered insight to the Court, just as it did for this Court in Stoudemire (likewise reviewing the background of Michigan habitual-offender laws adapted from the New York penal code).

 While legislative history may support several legislative intentions directed toward those individuals targeted by the habitual-offender statutes — punishment, removal from society, or rehabilitation — there is no such diversity regarding the identity of the individuals to whom the statutes are meant to apply. Uniformly, the evident intent is to target habitual offenders, those who persist in criminal activity despite prior convictions.

 The majority asserts that these statutes from other states indicate that the Michigan Legislature “is fully capable of amending its language if it sees fit to do so.” Ante at 59-60. The majority would read positive meaning into Michigan legislative silence regarding, for instance, a Missouri statute, but refuses to do so in light of decades of settled Michigan law. The Michigan Legislature may well have remained silent because no Michigan court until today has ever held that multiple convictions arising from the same act count as multiple offenses for purposes of habitual-offender enhancement.

 See Petty v United States, 481 US 1034 (1987), United States v Petty, 828 F2d 2 (CA 8,1987), United States v Petty, 798 F2d 1157 (CA 8, 1986), and 134 Cong Rec S17360, 17370 (daily ed November 10, 1988). For a history of this development, see also United States v McElyea, 158 F3d 1016, 1018-1020 (CA 9, 1998); Stoudemire, 429 Mich at 275-276.

 It appears that the majority is driven by a new view of statutory interpretation,
[b]ut even were we to posit for argument’s sake that changes in interpretive approach take place from time to time, we could not agree that the existence of such a change would justify reexamination of well-established prior law. Principles of stare decisis, after all, demand respect for precedent whether judicial methods of interpretation change or stay the same. Were that not so, those principles would fail to achieve the legal stability that they seek and upon which the rule of law depends. [CBOCS West, Inc v Humphries, _ US _, _; 128 S Ct 1951; 170 L Ed 2d 864 (2008).]

 I find the majority’s concern regarding judicial discretion somewhat puzzling because, as the majority observes, the statutes themselves give courts and prosecutors broad discretion in when and how they apply. Giving notice of the intent to seek a sentence enhancement for a defendant who is an habitual offender is at the discretion of the prosecutor. See MCL 769.13(1). Imposing a sentence enhancement is discretionary for the sentencing court. See MCL 769.10(1)(a) and (b); MCL 769.11(1)(a) and (b); MCL 769.12(1)(a) and (b).

 MCL 750.227b(l) states that a
person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony ... is guilty of a felony, and shall be imprisoned for 2 years. Upon a second conviction under this section, the person shall be imprisoned for 5 years. Upon a third or subsequent conviction under this subsection, the person shall be imprisoned for 10 years.